No. 47,838

Mary C. Jarvis, *Appellant,* v. Melvin L. Jarvis, *Appellee.*

(544 P. 2d 1384)

Opinion filed January 24, 1976.

*Philip Shaffer,* of Salina, argued the cause, and *Frank C. Norton,* also of Salina, was with him on the brief for the appellant.

*Arthur B. Dillingham,* of Salina, argued the cause, and *John Q. Royce,* of Hampton, Royce, Engleman and Nelson, also of Salina, was with him on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: This is an appeal from an order of the district court modifying the amounts of unaccrued alimony payments originally awarded the plaintiff-appellant, Mary C. Jarvis. Plaintiff's principal complaint is that there was not a sufficient showing of changed circumstances to justify a modification of the earlier award.

Mary Jarvis was granted a divorce from the defendant-appellee, Melvin L. Jarvis, on September 8, 1965, on the ground of extreme cruelty. As part of the divorce decree Mary was awarded the custody of the three minor children; child support in the amount of $325.00 per month; various stocks and bonds valued in excess of $19,500.00; and certain described real estate commonly referred to as the "sand pit" property. As part of the property award Mary was granted the sum of $30,000.00 to be paid by defendant in quarterly installments at the rate of $500.00 per quarter until fully paid. In addition, she was awarded $10,000.00 in permanent alimony, payable in twenty semi-annual installments of $500.00 each, and terminable alimony of $500.00 per month to end upon her death or remarriage. Defendant Melvin Jarvis was awarded various stocks and bonds, his interest in the partnership of Mid-States Finance Company, all interest in several life insurance policies, certain described real estate, and personal belongings.

Defendant made full alimony and property settlement payments until May 21, 1970. On June 8, 1970, defendant filed a motion in the district court, pursuant to K. S. A. 1969 Supp. 60-1610 (c) (now

K. S. A. 1975 Supp. 60-1610 [c]), seeking a modification of the alimony judgment. Defendant's motion alleged a reduction or termination in alimony was necessary as a result of changed circumstances. The court heard the motion and made extensive findings and conclusions of law. It noted that since the issuance of the decree of divorce the circumstances of the parties had changed. Specifically, the court found that the parties' three children had attained the age of majority and child support payments had been terminated; that plaintiff had been employed as a teacher from 1966 until May, 1970, at which time she enrolled in graduate school; that plaintiff sold ninety-eight acres of the "sand pit" property for $140,000.00; that plaintiff had contracted to sell the remaining acreage but the contract was in default and completion of the sale was doubtful; that plaintiff's net asset value had increased to $131,570.00; that although there had been changes in defendant's financial condition resulting principally from the sale of the two subsidiary corporations and restrictions on the amount of salary paid to him, he had a very substantial asset in the Jarvis Construction Company which he started in 1950; that the deterioration in defendant's financial condition was not of a permanent nature; and that defendant had made no alimony payments since May, 1970.

Despite these changes in the parties' conditions since the date of the divorce, the court did not consider them of such a substantial nature as to justify or require a reduction in the alimony judgment. The motion was denied in its entirety.

On February 23, 1973, defendant filed another motion in the district court seeking a modification or termination of the alimony judgment. In support of his motion defendant alleged there were further changes in plaintiff's and defendant's circumstances since the filing of the previous motion to modify.

On July 13, 1973, a pre-trial conference was held and the parties stipulated to the following facts:

"(a) That property settlement payments heretofore ordered by the Court to be made by the defendant were current to July 1, 1973, and since the former hearing in April of 1971, the defendant has paid $6,000.00 to the Clerk of the Court to apply on said property settlement judgment.

"(b) Plaintiff has completed her post-graduate work and received a Masters Degree in history in October, 1972. She completed work toward said Masters Degree in May, 1972.

"(c) Plaintiff sold her home in Salina at 114 Overhill Road for $35,000.00. . . . She netted from said sale approximately $23,500.00.

"(*d*) Plaintiff would receive a starting salary of from $8,000.00 to $10,000.00 if she were employed as a school teacher.

"(*e*) The real estate sales contract entered into in 1968 between the plaintiff and John Ryberg for his purchase of 38 acres, referred to as the 'sand pit property' for the sum of $80,000.00 plus interest on deferred payments was paid in full recently and during the year of 1973. Said payment being in the sum of $72,250.00.

"(*f*) Property settlement payments are current except for one Five Hundred dollar installment which became due on or about July 1, 1973.

"(*g*) The four children of the plaintiff and defendant are now all over the age of eighteen years. . . ."

After hearing the merits of the motion and giving careful consideration to the evidence before it, the trial court adopted the stipulations and issued further findings of fact and conclusions of law which we quote in pertinent part:

"(*g*) . . . The court finds that the Plaintiff received the following sums of money in 1973 which she used to purchase securities: net from the sale of the property at 114 Overhill Rd., Salina, Kansas $23,500; net from the sale of Thirty-Eight acres of land to Ryberg $70,250, and property settlement payments received from Mel Jarvis $6,000.00, or a total of $99,750.00. . . .

"(*h*) The sale of the house and land, referred to in the finding above, converted $93,750.00 worth of real estate to cash, which was used to buy some of the income-producing securities. Plaintiff's 1973 income will be substantially greater than her 1972 income.

"(*i*) . . . She is currently working toward a doctor's degree and preparing herself to take a comprehensive examination before proceeding with her thesis. . . .

"(*j*) By the terms of the property settlement provisions of the decree dated Sept. 8, 1965, plaintiff was awarded real and personal property of the approximate value of $123,617.00, not including her automobile, furniture and personal belongings, nor the judgments for permanent and terminable alimony. In April 1971, her assets were valued at $133,570. It is noted that at that time the value of the equity in the home at 114 Overhill Road, Salina, Kansas was $4280.00 and that it was subsequently sold and plaintiff realized the net sum of $23,500 for her equity, an increase of $19,220.00, less payments made by her on the loan principal during the interim. The total value of plaintiff's assets on August 1, 1973 is the sum of $135,653. She does not own any real estate. All of the plaintiff's assets are now invested in bank certificates of deposit, G. S. A. bonds, treasury note, and certain corporate stocks and industrial bonds, as shown on Defendant's Exhibits One and 4. In addition the plaintiff has accrued and unaccrued but unpaid judgments against the defendant in this case in the total sum of $40,500.00 as shown in Defendant's Exhibit One. Said exhibits are incorporated in these findings by reference. These are conservative investments and the amount of annual return of interest and dividends is fairly predictable at about $9600.00.

"(*k*) Substantially all assets originally awarded to plaintiff by the court's decree have been sold and most of the proceeds invested in income producing securities. The plaintiff is in a better position financially·because of the sale

of her home, excising the expense of maintenance, taxes, interest on the mortgage, and insurance. At the time of the previous hearing, the balance due for sale of the thirty-eight acre tract to Ryberg was a questionable asset because the contract had been in default for several years.

. . . . . . . . . . . . . .

"(q) According to plaintiff's 1971 financial statement she then owned $61,000.00 in interest and dividend-paying securities which produced an annual return of $4543. Her 1973 financial statement shows that she owns approximately $135,000.00 in securities, which will give her an investment return of about $9600.00 a year.

"(r) The defendant, Melvin L. Jarvis, president of Mel Jarvis Construction Company has been since September 30, 1965 and is now employed at an annual salary of $40,000.00 plus one hundred percent reimbursement for business travel expenses; and, in addition, he has borrowed funds from the corporation from time to time. On January 1, 1972 he was indebted to the corporation in the sum of $33,275.00; on January 1, 1973 $31,301.02; and on June 30, 1973 $37,016.00. This indebtedness is evidenced by promissory notes, with interest at 8%. In addition, he was personally indebted to banks and life insurance companies as of August 31, 1973 in the sum of $39,023.00. The amount of his salary is limited only by virtue of agreements with two prior lenders who owned fifteen hundred warrants which can be converted to common stock on or before the expiration date of the agreement, Sept. 28, 1973, and the earnings of the corporation; and, also, to the reasonable value of his services to the corporation in accordance with the rulings of the internal revenue service. The company has paid no bonus, stock or cash dividends to Jarvis since September 1965. Although the corporate stock is valued on the books at cost at $100 per share, the option to convert calls for a price of $132.00 per share for a minority stockholder interest. The corporation has offered to purchase back this option for $50,000.00. The defendant owns 2252 shares of a total of 2554 shares of the company's issued common stock, thus giving him effective control of the corporation.

. . . . . . . . . . . . . .

"(u) Defendant's last alimony payment was made May 21, 1970. Since plaintiff has not received alimony payments, she has had to use some of her assets to meet expenses. Of course, inflation has continued to increase since April of 1971.

"CONCLUSIONS

"(1) In April 1971 the plaintiff owned substantial real estate which produced little, if any, income. The sale of the 'sandpit' property was subject to a contract of sale to Ryberg, which was several years in default, and of doubtful value. Since that time the contract price and interest has been paid in full and, in addition, the plaintiff has sold her home on Overhill Drive in Salina. All of her assets now consist of securities and investments which will give her an annual return of approximately $9600.00, which is about double her 1971 income. She has accrued, unpaid judgments against the defendant of $23,500.00. Her net worth has increased some seventy-five hundred dollars, although she has had no employment income, and her living expenses have decreased substantially. Her financial situation is considerably better.

"In addition she has received a master's degree from the University of Kansas and is qualified to teach in the secondary schools and junior colleges of Kansas. She is capable of earning from eight to ten thousand dollars a year. The court is of the opinion that plaintiff could obtain a teaching position, or other suitable employment. The fact that she wishes to continue her education toward obtaining a doctor's degree and not to obtain employment at this time are circumstances to be considered by the court.

"(2) The defendant has not made alimony payments as ordered by the court and is now in arrears $23,000.00. Under the existing order, the defendant is required to pay $1000.00 per month [sic] [year] alimony and $6000.00 terminable alimony; and $2000.00 on property settlement. The evidence before the court indicates that the defendant's salary will continue to be $40,000.00 a year in the foreseeable future, and his yearly expenses about $35,000.00 to $38,000.00 not including payments to plaintiff under the present order.

"(3) The court concludes there has been substantial changes in the circumstances of both of the parties since April 1971 and continuation of the present order for payment of alimony would be unfair and inequitable, and work a hardship upon the defendant.

"(4) Considering all of the evidence and the circumstances of the parties, including the needs of the plaintiff and the income and financial status of the defendant, the court concludes that a reduction in alimony payments should be ordered."

Based on these findings and conclusions the trial court issued its order modifying the alimony judgment. The original award of $10,000.00 permanent alimony was modified as to the balance of the judgment not due as of August 31, 1973, by reducing the amount of the semi-annual installments from $500.00 to $250.00 each and extending the time for payment. The original award of terminable alimony was reduced as to all payments not accrued as of August 31, 1973, from the original amount of $500.00 per month to $150.00 per month. In all other respects the original decree remained unchanged.

Plaintiff brings this appeal following a denial of her motion for a new trial. Although plaintiff designates six points of error on the part of the trial court as cause for a new trial, we believe her contentions boil down to a question of whether the trial court abused its discretion by ruling there had been a substantial change in both plaintiff's and defendant's circumstances, necessitating a modification of the original alimony judgment.

K. S. A. 1975 Supp. 60-1610 (c) governs the allowance and payment of alimony and authorizes the court to modify the amount or conditions for payment of alimony originally awarded but not yet due. The trial court is vested with considerable judicial discretion in making an award of alimony, and if alimony is awarded

at the time of the decree, future changes in the circumstances of the parties may be considered by the court at an appropriate time as a basis for modifying that portion that has not become due. (*Folk v. Folk*, 203 Kan. 576, 455 P. 2d 487.) Our rule on review of a modification of an original alimony judgment is limited to a determination of whether there is substantial competent evidence to support the holding of the trial court.

At the time of the divorce decree plaintiff was awarded real and personal property with the approximate value of $123,000.00, not including her automobile, furniture, and personal belongings. The bulk of the property received was not income-producing. In fact, the "sand pit" property, while valued at $102,127.00, was considered a liability since the expenditures thereon exceeded the income it produced. Plaintiff also had the responsibility of raising three minor children. During her twenty years of marriage she had never worked outside the home.

Defendant filed a motion for modification of alimony payments in 1970. At that time the trial court did not feel the circumstances had sufficiently changed to order a reduction in the original alimony award. Plaintiff's assets were still of questionable value and while defendant's financial condition had worsened somewhat it was not considered by the court to be of a permanent nature. Subsequent to the date of defendant's first motion, significant changes occurred in the circumstances of both parties. After teaching school four years, plaintiff entered graduate school and obtained a master's degree in history in May, 1972. It was stipulated by the parties that plaintiff would receive a starting salary of at least $8,000.00 if she were employed as a school teacher. Furthermore, plaintiff no longer had to support any of the three children since they had all reached the age of majority. Over the years, plaintiff gradually liquidated her non-income producing assets and transferred the funds into stocks and bonds. She realized a substantial increase in the value of her assets by the sale of the remaining "sand pit" property which was considered a questionable asset at the time of the prior hearing. By August, 1973, plaintiff's net worth had increased to $134,353.00, plus an additional $40,000.00 in unpaid judgments against defendant. At the time of the last hearing plaintiff was receiving an annual return of approximately $9,600.00 from her securities and investments.

Turning to defendant, the record discloses he was in arrears in

alimony payments in the sum of $23,000.00; his indebtedness had materially increased since the date of the previous hearing; his salary was limited to $40,000.00 per year for the foreseeable future; and his annual expenses were from $35,000.00 to $38,000.00, not including any payments to plaintiff.

We conclude there is substantial competent evidence to support the extensive findings of fact and conclusions of law made by the trial court and the judgment of the court is affirmed.