(911 P.2d 192)

No. 72,954

In the Matter of the Marriage of BRUCE C. HEDRICK, *Appellee,* and JUDITH B. HEDRICK, *Appellant.*

—

Opinion filed February 2, 1996.

*Judith B. Hedrick,* appellant pro se.

*Joseph R. Horgan,* of Olathe, for appellee.

Before GERNON, P.J., MARQUARDT, J., and JAMES W. PADDOCK, District Judge Retired, assigned.

MARQUARDT, J.: Judith B. Hedrick appeals from the district court's order reducing maintenance from $1,325 per month to $500 per month.

On January 2, 1991, after 17 years of marriage, Judith and Bruce Hedrick were divorced. The decree incorporated a separation and property settlement agreement (PSA), which the parties executed on November 29, 1990. Bruce, an attorney, drafted the PSA. Judith was in law school when she signed the PSA.

The PSA provided:

"The HUSBAND shall pay maintenance to the WIFE in the sum of $1,325.00 per month, commencing December 1, 1990. Said payments continue each following month thereafter and shall terminate after sixty (60) months. Said payments shall terminate on the earlier occurrence of the following contingencies:

A. The death of either HUSBAND or WIFE.

B. WIFE's remarriage or her cohabitation with an unrelated male for more than thirty (30) consecutive days, or the equivolent [sic] thereof.

"The parties further agree that the HUSBAND shall have the right and *the Court shall retain the jurisdiction to revise or modify the term or the amount of maintenance as a result of a material change in circumstances.*" (Emphasis added.)

In May 1993, Judith received her JD. Judith received her license to practice in September 1993 and began working Saturdays only for a law firm in November of that year. Judith's work hours gradually increased and by March 1994, she was earning $2,075 per month. In early May 1994, Bruce filed a motion to terminate or reduce maintenance. On August 1, 1994, Judith was hired as a staff attorney for Social and Rehabilitation Services (SRS), earning an annual salary of $32,800 ($2,733 per month). From the time of the divorce to the time of the modification hearing, Bruce's annual income had increased from $32,000 to $51,000.

The district court held that "[a] significant change in circumstances has occurred" and reduced the monthly maintenance payments, beginning October 1, 1994, from $1,325 to $500 for the balance of the term specified in the PSA.

Judith argues that her employment is not a material change in circumstances, that the term "material change in circumstances" is vague, that the court erred in not admitting parol evidence, and

that the court's finding was not supported by substantial competent evidence.

Judith's counsel attempted to elicit testimony that her eventual employment was contemplated at the time the parties executed the PSA. In response to an objection, Judith's counsel stated, "I mean to show the change in circumstances . . . of her getting a job was obviously contemplated by the parties at that time and the fact that Mrs. Hedrick has a law job is not a material change in circumstances." The district court sustained the objections of Bruce's counsel to questions on this subject.

Notwithstanding the foregoing, Judith's counsel stated:

"The decree speaks for itself. We cannot bring in [parol] evidence about this decree and why it was made the way it was. The only issue before the Court is has there been a material change in either Mr. Hedrick['s] or Mrs. Hedrick's circumstances, and I think [parol] evidence about why the decree was worded like it was and why the figures were figured like they were is irrelevant. . . .

. . . .

"This is a case of has there been a material change in circumstances."

To the extent that these statements raised the parol evidence issue, it appears that Judith's counsel waived it at the hearing.

"The general rule is that a point not presented to the trial court will not be considered for the first time on appeal. [Citation omitted.]" *University of Kansas v. Department of Human Resources*, 20 Kan. App. 2d 354, 356, 887 P.2d 1147 (1995); see also *State ex rel. Dix v. Plank*, 14 Kan. App. 2d 12, 14, 780 P.2d 171 (1989) (refusing to examine the issue of material change of circumstances in appeal of child support modification where the record did not contain any reference to a timely objection on the issue).

Judith argues on appeal that the term "material change in circumstances" is "vague and ambiguous." Bruce argues that Judith raises the vague and ambiguous issue for the first time on appeal.

The district court stated that the agreement was not ambiguous. "There's no alleged ambiguity. . . . There's no alleged mutual mistake that would allow [parol] evidence. . . . [T]he issue . . . is not that the agreement is a result of fraud or overreaching." Judith made no objection at the time of the district court's ruling, and she did not file a motion to reconsider.

Judith raised the vague and ambiguous issue in her motion for declaratory judgment and motion to dismiss. The district court denied Judith's motion, holding that it was "procedurally incorrect." Judith did not present the ambiguity argument in any other motion, and it was not raised in any proceeding. Judith did nothing to preserve the vague and ambiguous issue for appeal; therefore, it is not properly before the court. The issue concerning Judith's employment, as it relates to a material change in circumstances, is properly before this court.

Maintenance settled by a separation agreement that is incorporated into the divorce decree is not "subject to subsequent modification by the court except: (A) As prescribed by the agreement or (B) as subsequently consented to by the parties." K.S.A. 60-1610(b)(3); *cf. Spaulding v. Spaulding*, 221 Kan. 574, 576-77, 561 P.2d 420 (1977) (construing predecessor statute).

Bruce and Judith settled the maintenance issue in their PSA, and the PSA was incorporated into the divorce decree. The PSA empowered the district court with continuing jurisdiction to modify the maintenance "as a result of a material change in circumstances," upon Bruce's request. The question on appeal is whether there was a material change in circumstances sufficient to justify a modification in maintenance (referred to as alimony in prior statutes and appellate court opinions interpreting those statutes).

"The trial court has wide discretion when it comes to matters relating to alimony, and its judgment in awarding alimony will not be disturbed absent a clear abuse of discretion. [Citation omitted.]" *Martin v. Martin*, 5 Kan. App. 2d 670, 676, 623 P.2d 527, *rev. denied* 229 Kan. 670 (1981); see *In re Marriage of Cline*, 17 Kan. App. 2d 230, 234, 840 P.2d 1198 (1992).

This court will reverse a district court's ruling on an action to modify maintenance only if the district court abused its discretion. *Jarvis v. Jarvis*, 218 Kan. 679, 683-84, 544 P.2d 1384 (1976); *Lambright v. Lambright*, 12 Kan. App. 2d 211, 213-14, 740 P.2d 92 (1987). Discretion is abused if no reasonable person would take the view adopted by the trial court. See *Reich v. Reich*, 235 Kan. 339, 343, 680 P.2d 545 (1984).

*Jarvis* and *Lambright* set forth both the abuse of discretion and substantial competent evidence standards, stating: "[The appellate court's] review of a modification of an original alimony judgment is limited to a determination of whether there is substantial competent evidence to support the holding of the trial court." 218 Kan. at 684; see 12 Kan. App. 2d at 213. "Substantial competent evidence is 'evidence possessing something of substance and relevant consequence and which furnishes substantial basis of fact from which issues can reasonably be resolved.' [Citation omitted.]" *Lambright*, 12 Kan. App. 2d at 213.

Cases utilizing the substantial competent evidence standard appear to be limited to situations in which the parties did not agree to the maintenance amount in a separation agreement. See *Jarvis*, 218 Kan. at 683-84; *Carlton v. Carlton*, 217 Kan. 681, 681-82, 538 P.2d 727 (1975); *Moran v. Moran*, 196 Kan. 380, 386, 411 P.2d 677 (1966). Because the district court has the statutory authority to modify maintenance, as opposed to where the parties set maintenance by agreement (*Lambright*, 12 Kan. App. 2d at 213; K.S.A. 60-1610[b][2] and [3]), the same standard of review logically applies where the court is granted continuing jurisdiction to modify maintenance. See K.S.A. 60-1610(b)(3)(A).

Judith's argument for de novo review is contrary to established law and principles of appellate review. See *Lambright*, 12 Kan. App. 2d at 213.

Judith argues that her future employment was a circumstance that was foreseeable at the time the PSA was signed, even though it was not specifically addressed in the PSA. She contends that her employment cannot be used as the basis for a modification of the maintenance.

The PSA conferred power on the district court to modify maintenance if a material change in circumstances occurred. Determination of a material change in circumstances is fact specific. See *In re Marriage of Case*, 19 Kan. App. 2d 883, 889, 879 P.2d 632, *rev. denied* 255 Kan. 1002 (1994) (examining child support modification). There is no Kansas case which interprets the phrase "material change in circumstances" as it relates to a modification of maintenance. In the child support context, the *Case* court stated:

" 'What constitutes a material change [in circumstances] depends on the case. . . . Most courts agree that a change should be material, involuntary, and permanent in nature.' [Citation omitted.]" 19 Kan. App. 2d at 889.

In *Carlton*, the Supreme Court evaluated the termination of maintenance payments by the district court, noting: "The role of this court is not that of a trier of fact. We are required to accept the evidence which is most favorable to the prevailing party and where there is substantial competent evidence in the record to sustain the judgment, it is our duty to sustain it. [Citations omitted.]" 217 Kan. at 681-82.

Bruce argues that Judith's employment was not contemplated by the parties when the PSA was signed and there is nothing in the record that reveals the understanding of the parties on that issue.

While there is no reported Kansas case on this precise issue, Judith cites authority from other jurisdictions.

Judith argues that "the general rule is that where the alleged change is one that the trial court expected and probably made allowances for when entering the original decree, the change is not a ground for modification of the decree." Judith's statement of the general rule is supported by legal encyclopedias and cases cited therein. See 24 Am. Jur. 2d, Divorce and Separation § 712, pp. 701-02; Annot., 18 A.L.R.2d 10, 21.

Judith cites a Nebraska case that applied a Nebraska statute which allows alimony awards to be modified. In *Desjardins v. Desjardins*, 239 Neb. 878, 880, 479 N.W.2d 451 (1992), the court stated:

"[G]ood cause is demonstrated by *a material change in circumstances*, but *any changes in circumstances which were within the contemplation of the parties at the time of the decree*, or that were accomplished by the mere passage of time, *do not justify a change or modification of the order*. [Citation omitted.]" (Emphasis added.)

Kansas does not have a statute similar to Nebraska's. The previously cited authorities and statute apply where there was no agreement signed by the parties. Where there is a PSA, contract law applies, and the provisions of the PSA control.

Judith also cites an Oregon case, *Hellweg v. Hellweg*, 30 Or. App. 995, 997, 568 P.2d 710 (1977), where the court stated:

"Modification of the spousal support provisions of a dissolution decree is appropriate only when a substantial change of circumstances has occurred which could not have reasonably been expected at the time of the decree. [Citation omitted.] Husband contends that a change of circumstances has occurred in that wife is now employed and has accumulated some assets."

In *Hellweg*, the original divorce decree indicated that the wife's obtaining employment was a foreseeable event. Thereafter, the wife did obtain employment. 30 Or. App. at 995, 997-98. In *Hellweg*, the wife's employment was not a material change of circumstances. *Hellweg* is clearly distinguishable from the instant case, however, in that neither the Hedricks' divorce decree nor the PSA contained any reference or language concerning the foreseeability of the wife obtaining employment.

Judith argues that the district court's finding of a material change in circumstances is not supported by the record because the district court placed too much emphasis on her new job and did not consider the overall financial condition of both parties. She also argues that her future employment was "a circumstance that was known at the time the contract was entered into and not specifically addressed in the contract" and cannot now be used as the basis for a modification. There is no evidence or law to support her argument on this issue.

Judith argues that the district court did not examine Bruce's financial circumstances and that the court determined that a material change had been shown before any evidence of his finances was presented. The district court, however, considered both parties' income and other factors in both its oral ruling and in its journal entry. The journal entry provides:

"3. A significant change in circumstances has occurred. Specifically, the respondent has graduated from the University of Kansas School of Law and is now a licensed practitioner. She has also gained employment with the State of Kansas as a staff attorney for SRS. Her earnings have increased from approximately $240.00 per month at the time of the divorce, to a present salary of $32,800.00 per year, plus a benefit package. While the petitioner's income has also increased, it has not increased so dramatically. Also, the petitioner has been forced to modify

his earlier solo practice to include increasing reliance on state and municipal sources of income."

Judith argues that the district court did not properly consider other factors such as the parties' relative debt load. Judith points out that the district court misstated her student loan debt to be $16,000 when it was actually $26,318.

Judith points to *Jarvis* and *Lambright* as two cases where the district court considered a variety of factors in modifying maintenance. Judith may be correct that the district court rulings in both *Jarvis* and *Lambright* were more thorough than the determination in the instant action. In both cases, however, the appellate court merely affirmed the district court's judgment. 218 Kan. at 685; 12 Kan. App. 2d at 214.

Whether the district court in this case did as thorough a job as the district courts in *Jarvis* and *Lambright* is not the issue. The court based its opinion on the evidence that was presented in the hearing. The issue here is whether there is substantial competent evidence to support the ruling of the district court and whether the district court abused its discretion. See *Jarvis*, 218 Kan. at 683-84; *Lambright*, 12 Kan. App. 2d at 213. The court considered Judith's stable, salaried employment, Bruce's "plight" as a sole practitioner, the lack of business expenses associated with Judith's employment, the dramatic increase in Judith's earnings, and the overall financial condition of both parties. It cannot be said that no reasonable person would take the view adopted by the district court. There was no abuse of discretion. See *Reich*, 235 Kan. at 343.

Affirmed.