NOT DESIGNATED FOR PUBLICATION

No. 113,410

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

TAMARA LYNN GUTHRIE-CRAIG (now PATTERSON),
*Appellee*,

and

CHARLES "LEE" CRAIG,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; HAROLD E. FLAIGLE, judge. Opinion filed June 3, 2016. Affirmed.

*Jennifer A. Wagle*, of Cleary, Wagle & West, of Wichita, for appellant.

*Robert D. Wiechman, Jr.*, of Wichita, for appellee.

Before GARDNER, P.J., LEBEN, J., and HEBERT, S. J.

*Per Curiam*: Charles "Lee" Craig appeals from a district court order which denied his motion to terminate his child support payments for his adult daughter and increased the amount of his child support payments for his minor daughter. The district court found that Charles was contractually bound to pay child support beyond the age of 18 and that the court lacked jurisdiction to modify that contract. We agree.

1

*Procedural background*

Tamara Lynn Guthrie-Craig (now Patterson) petitioned for divorce from Charles "Lee" Craig in 2009. At that time, the couple had two minor children, Ca.C., born in 1994, and Cl.C., born in 2000. Tamara submitted a child support worksheet which was incorporated in the divorce decree. The district court made a $1,043 upward adjustment to the rebuttable presumption amount based on the overall financial condition of the parties.

Prior to the divorce, Charles and Tamara had entered into a property settlement agreement which provided in part:

> "[Charles] shall pay to [Tamara] the sum of $1,250.00 every two weeks beginning on September 3[], 2010 and continuing in a similar amount every two weeks thereafter as and for child support through May 31, 2022. Said support shall be paid to the Kansas Payment Center . . . until the minor child, [Cl.C.'s] eighteenth birthday. . . . After [Cl.C.'s] eighteenth birthday, said child support obligation of $1,250.00 every two weeks shall be paid directly to [Tamara] . . . and shall terminate upon May 31, 2022."

The effect of this agreement was that Charles would continue to pay child support until the younger daughter was 22 and the older daughter was 28.

The agreement acknowledged its contractual nature and provided that it would not be easily set aside.

> "This agreement is absolute, irrevocable and is not conditioned upon the parties being divorced or upon approval of the Court. It shall be considered to be contractual between them and binding upon the parties, their executors, administrators, heirs, devisees, beneficiaries, assigns or other legal representatives where applicable for the purpose of carrying out the terms thereof. It may be set aside only should the Court see fit and upon good cause being shown not to approve it.

. . . .

"The provisions of this agreement replace any and all other agreements and understandings either written or oral or Court ordered between the parties. Any modifications hereto shall be done in writing, dated and signed and shall be made only by the mutual consent and agreement of the parties except for further orders of the court."

The district court approved the property settlement agreement after finding it "fair, just and equitable to both parties," and the property settlement agreement was incorporated into the divorce decree issued in December 2010.

In 2013, when Ca.C. was 19 years old and Cl.C. was 13 years old, Charles filed a motion to terminate his child support payments as to the older daughter and to modify them as to the younger daughter. Charles argued the child support provision in the divorce decree failed to comply with the Kansas Child Support Guidelines and should be set aside to the extent it required him to pay child support past the age of majority.

At the evidentiary hearing, the parties agreed it had been Charles' idea to pay support in the amount of $1,250 every 2 weeks through May 31, 2022, to help pay for college and medical expenses. Charles testified to the following: child support was not enforceable by the court after the child reached the age of majority, but he assumed child support could be modified once the child turned 18; he had spoken to an attorney but had decided not to hire one; he had read and understood the terms of the divorce decree before signing it; and he had never agreed to pay child support through May 31, 2022, but had signed the property settlement agreement "to get it over with." Charles was also asked about the child support worksheet. After testimony regarding various W-2's from several employers, Charles admitted that for 2013 his gross annual income was higher than he had reported.

Following the hearing, the district court issued a written decision denying Charles' motion. As to the oldest child, the district court found that because she had reached the age of majority, Charles remained "liable for support for that child until May, 2022, by his agreement." As to the minor child, the district court found it had authority to modify child support until the child reached 18 years of age. The district court found a material change in circumstances, so ordered a recalculation of the child support payments. The district court then increased the amount of child support, ordering Charles to pay $1,667 per month for the minor child from July 1, 2013, until she reached the age of majority, at which time the support Charles agreed to in the property settlement agreement would revive.

Charles then filed a motion to reconsider. Tamara also filed a motion due to the district court's misstatement of child support amounts; she asked the court to correct its ruling. Following a hearing on the motions, the district court denied Charles' motion to reconsider and granted Tamara's motion. The court modified the language and ordered Charles to pay $1,250 every 2 weeks as originally agreed upon. Charles timely appeals.

I.      *Did the district court err by finding the property settlement agreement was valid, just, and equitable?*

Charles first argues that the district court should have vacated the child support orders in the decree because they are not fair, just, or equitable. He asks this court to find the property settlement agreement was not valid, just, and equitable and contends the district court erred by incorporating the agreement into the divorce decree without making the requisite findings. Charles concedes that he is not challenging the division of property but only the amount of child support payments.

We address below Charles' argument that the district court erred by failing to modify his child support payments. That issue is determined by the Kansas Child Support

4

Guidelines, which does not measure the amount of child support payments by a "fair, just and equitable" standard. See Guidelines § I (2015 Kan. Ct. R. Annot. 111.) (noting the calculation in the child support worksheet is a rebuttable presumption of a reasonable child support order and any deviation must be made in the best interest of the child).

K.S.A. 2015 Supp. 23-2902(a) states the court may award *maintenance* "in an amount the court finds to be fair, just and equitable under all of the circumstances." But maintenance was not awarded in this case. Instead, Charles and Tamara agreed to extend child support payments past the age of majority and the district court found the agreement to be "fair, just and equitable to both parties." The correct standard to apply to property settlement agreements, however, is that they must be "*valid*, just and equitable." (Emphasis added.) See K.S.A. 60-1610(b)(3) recodified in K.S.A. 2015 Supp. 23-2712(a); *In re Marriage of Schmeidler*, 2015 WL 5613151, at *2 (noting that separation agreements are often called property settlement agreements).

When an appellant challenges the district court's findings regarding the "valid, just and equitable" nature of a separation agreement, our review is limited to determining whether such factual findings are supported by substantial competent evidence. *In re Marriage of Takusagawa*, 38 Kan. App. 2d 401, 403, 166 P.3d 440, *rev. denied* 285 Kan. 1174 (2007).

Property settlement agreements incorporated into a divorce decree are not easily modified. As a general rule, issues settled in a separation agreement that are incorporated into a divorce decree "are not subject to subsequent modification except as provided for in the agreement or as mutually agreed to by the parties. See *In re Marriage of Hedrick*, 21 Kan. App. 2d 964, 967, 911 P.2d 192 (1996); [K.S.A. 60-1610(b)(3)]." *Schmeidler*, 2015 WL 5613151, at *2.

5

To justify modification of his property settlement agreement, Charles relies on *In re Marriage of Kirk*, 24 Kan. App. 2d 31, 941 P.2d 385, *rev. denied* 262 Kan. 961 (1997), claiming the requisite level of scrutiny was not met when the district court incorporated the property settlement agreement. He argues: "Had any such scrutiny been performed in this case, the District Court would have found the parties' agreement regarding child support was inequitable, invalid and unjust."

We agree that a certain level of scrutiny is required before a district court can incorporate the agreement into the decree. See K.S.A. 60-1610(b)(3); *Kirk*, 24 Kan. App. 2d 31, Syl. ¶¶ 1-2. In *Kirk*, the parties filed a domestic relations affidavit but no property values were listed in the separation and property settlement agreement and no testimony or other evidence of value of the parties' businesses was reviewed by the district judge before he approved the separation and property settlement agreement. 24 Kan. App. 2d at 33. We determined that based on the record, the district court had failed to review the separation agreement as required by K.S.A. 60-1610(b)(3).

But this case is distinguishable from *Kirk*. Here, the property settlement agreement specified amounts of assets and debts. The property settlement agreement also contained a specific provision regarding the support of the children—Charles agreed to pay $1,250 every two weeks beginning September 3, 2010, until May 31, 2022. And the parties provided a child support worksheet that echoed this amount. The parties followed Sedgwick County Local Rule 420, which provides: "If [a final hearing for an uncontested or default case] is ordered, the testimony of one of the parties, either directly before the Court under oath or through written interrogatories, shall be submitted to the Court at the hearing." Tamara submitted a default affidavit and the parties did not appear before the district court to argue the divorce. The district court reviewed the record and found the property settlement agreement to be valid, just, and equitable and incorporated it into the divorce decree.

6

Charles fails to provide any evidence to support his contention that the property settlement agreement was not valid, just, or equitable. As the party claiming an error occurred, Charles has the burden of designating a record to support his claim; without such a record, the claim of error fails. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644-45, 294 P.3d 287 (2013). We therefore find substantial evidence supporting the district court's determination that the property settlement agreement was valid, just, and equitable.

II.    *Was Charles entitled to relief pursuant to K.S.A. 60-260(b)?*

Charles next contends the district court erred in not relieving him of the child support provisions of the decree pursuant to K.S.A. 60-260(b). In support, Charles relies on *Richardson v. Richardson*, 3 Kan. App. 2d 610, 599 P.2d 320 (1979). Charles concedes that as a general rule, property settlement agreements may not be modified by the district court. Yet he contends the district court is not deprived of the "authority to grant relief from a final judgment under K.S.A. 60-260(b) merely because the judgment is a divorce decree incorporating a property settlement agreement." 3 Kan. App. 2d at 612.

We agree. But to say that a court retains the authority to do an act does not mean that the court erred in not doing that act. We find the facts in *Richardson* to be clearly distinguishable. In *Richardson*, the wife sought a nunc pro tunc order in the original divorce proceeding to have a *newly discovered* piece of land set aside to her. The district court liberally construed her motion as one seeking relief under K.S.A. 60-260(b). 3 Kan. App. 2d at 611. In contrast, Charles presents no newly discovered evidence, relying instead on the statute's catch-all provision, but showing no facts warranting relief under K.S.A. 60-260(b). We find no error in the district court's denial of his 60-260(b) motion.

7

III.     *Did the district court err by failing to comply with the Kansas Child Support Guidelines?*

Charles next contends the child support provisions of the divorce decree were not based on a child support worksheet and did not comply with the Kansas Child Support Guidelines. He claims the district court failed to make specific written findings when it indicated its reason for the overall financial adjustment of $1,043 per month. We disagree.

Parental child support obligations in a divorce action are governed by statute and guidelines established by our Supreme Court. See generally K.S.A. 2015 Supp. 23-3001 *et seq.* (governing court's obligation and authority to make provisions for child support); K.S.A. 2015 Supp. 20-165 (mandating Supreme Court to adopt rules establishing child support guidelines; Kansas Supreme Court Administrative Order No. 261, effective April 1, 2012). "'The standard of review of a district court's order determining the amount of child support is whether the district court abused its discretion, while interpretation and application of the Kansas Child Support Guidelines are subject to unlimited review.' [Citation omitted.]" *In re Marriage of Thomas*, 49 Kan. App. 2d 952, 954, 318 P.3d 672 (2014).

In the absence of specific findings, a district court's failure to follow the Guidelines is reversible error. See *In re Marriage of Thurmond*, 265 Kan. 715, 716, 962 P.2d 1064 (1998). A court can deviate from the amount of child support determined through use of the Guidelines but must justify any such deviation through specific written findings in the journal entry. The deviations must serve the best interests of the children. *In re Marriage of Vandervoot*, 39 Kan. App. 2d 724, 732, 185 P.3d 289 (2008). Such findings are generally reviewed for substantial competent evidence and to ensure they are sufficient to support the district court's conclusions of law. *In re Marriage of Atchison*, 38

8

Kan. App. 2d 1081, 1089, 176 P.3d 965 (2008). Here, the district court made sufficiently specific findings supported by sufficient evidence, as detailed below.

At the time the district court issued the journal entry and divorce decree in this case, the 2008 Guidelines were in effect. See Guidelines § I (2010 Kan. Ct. R. Annot. 113). They provide:

> "The calculation of the respective parental child support obligations on Line D.9 of the worksheet is a rebuttable presumption of a reasonable child support order. If a party alleges that the Line D.9 support amount is unjust or inappropriate in a particular case, the party seeking the adjustment has the burden of proof to show that an adjustment should apply. If the court finds from relevant evidence that it is in the best interest of the child to make an adjustment, the court shall complete Section E of the Child Support Worksheet. The completion of Section E of the worksheet shall constitute the written findings for deviating from the rebuttable presumption." Guidelines § I (2010 Kan. Ct. R. Annot. 113).

The parties acted in accordance with Sedgwick County District Court Local Rules when Tamara filed a domestic relations affidavit with the divorce decree. That affidavit, stating the value for all of the assets, including the residence and the vehicles, was relevant evidence, as was the evidence presented at the hearing in 2013 on Charles' motion to modify his child support payments.

The amount on line D.9 of the child support worksheet attributed to Charles is $1,665. Charles does not attempt to rebut that amount but disputes the district court's adjusted amount, which increased that amount of child support by $1,043. The district court indicated it did so because of the overall financial condition of the parties, as provided in Section E of the worksheet, and that line E.6 was its reason for making the adjustment. The completion of that section "shall constitute the written findings for

9

deviating from the rebuttable presumption." Guidelines § I (2010 Kan. Ct. R. Annot. 113).

We find that the district court made the requisite findings for deviating from the Guidelines and that those findings are supported by substantial competent evidence. The district court thus did not abuse its discretion in determining $2,708 was Charles' net parental child support obligation.

IV.    *Did the district court err by denying Charles' motion to modify child support?*

Charles next challenged the district court's finding that it did not have authority to modify the child support once the children reached the age of majority; those payments were considered part of a contractual agreement. However, the district court found it did have authority to modify the child support of the minor child. Using the Guidelines, the district court recalculated Charles' child support payment as to the minor, Cl.C., until she reached 18. After 18, the district court ordered the payments to revert back to the parties' original agreement.

Charles argues that because the payments are for child support and district courts have jurisdiction over child support amounts, the district court has authority to modify the amounts even after the age of majority. He also argues the district court cannot claim to lack authority as to the oldest child but have authority as to the minor child to modify the payments until the child reaches the age of majority. Charles claims he initially agreed to extend the payments to help the children pay for college or further education, but his oldest daughter has chosen not to pursue higher education. Therefore, he contends, the continued child support payments are actually disguised maintenance payments.

This issue presents a matter of statutory interpretation—a question of law over which we have unlimited review. The most fundamental rule of statutory construction is

10

that the intent of the legislature governs if that intent can be ascertained. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Cady v. Schroll*, 298 Kan. 731, 738-39, 317 P.3d 90 (2014). We do so here.

Charles argues the district court has authority to modify child support based on K.S.A. 60-1610(b)(3), even if the property settlement agreement was incorporated into the divorce decree. That law stated:

> "If the parties have entered into a separation agreement which the court finds to be valid, just and equitable, the agreement shall be incorporated in the decree. . . . The provisions of the agreement on all matters settled by it shall be confirmed in the decree *except that any provisions relating to . . . support or education of the minor children* shall be subject to the control of the court in accordance with all other provisions of this article." (Emphasis added.) K.S.A. 60-1610(b)(3).

Charles contends this language means that provisions relating to child support remain subject to the control of the district court and cannot be settled merely by the agreement of the parties. But the statute refers to support of a *minor* child; payment to a child after the age of 18, although referred to as "child support" in the agreement, is not support of a minor child. The plain language of the statute defies an interpretation that a district court has control over a party's child support obligations *ad infinitum*.

Next, we look to K.S.A. 60-1610(a)(1), which addressed child support and education of minor children. This statute provided: "The court shall make provisions for support and education of the *minor children*. The court may modify or change any prior order . . . when a material change in circumstances is shown . . . ." (Emphasis added.) Thus as to the minor child, the district court had authority to modify the child support payments while the child was a minor.

11

The statute further provided:

> "Regardless of the type of custodial arrangement ordered by the court, the court may order the child support and education expenses to be paid by either or both parents for any child less than 18 years of age, at which age the support shall terminate unless: (A) The parent or parents agree, by written agreement approved by the court, to pay support beyond the time the child reaches 18 years of age . . . ." K.S.A. 60-1610(a)(1).

That exception squarely applies here.

We note that at the time of the parties' divorce, K.S.A. 60–1610(a)(1) provided that the obligation to pay child support shall terminate when the child reaches 18 unless any one of three events occur: (1) the parents have agreed otherwise in a court-approved writing; (2) the child reaches 18 before completing high school, in which case child support continues to June 30 of that school year; or (3) a motion is filed to continue support through the school year in which the child, held back by mutual parental consent, becomes 19. Only the first of these exceptions applies here and neither our discussion nor our holding relates to exceptions 2 or 3. *Cf. Matter of Marriage of Bunting*, 259 Kan. 404, 409-10, 912 P.2d 165 (1996) (interpreting K.S.A. 60–1610(a)(1)(C) as giving the district court jurisdiction to continue child support for a student, although the motion was filed after June 30 of the school year during which she became 18).

Reviewing the statutes as a whole, we find legislative intent that child support is for minor children only. Furthermore, the district court has inherent authority to modify child support payments made for minor children. Once a child turns 18 years of age, the obligation to pay child support pursuant to the statute terminates, as does the court's inherent authority to modify the support. See 2 Elrod, Kansas Law and Practice, Kansas Family Law § 14:27 (2014-2015 ed.). Parents may contractually agree to extend the payments in a written agreement, but such an agreement between the parties does not

extend the court's authority to modify the agreements. See *Bartlett Grain Co. v. Kansas Corporation Comm'n*, 292 Kan. 723, 726, 256 P.3d 867 (2011) ("[P]arties cannot confer subject matter jurisdiction by consent.") (quoting *Padron v. Lopez*, 289 Kan. 1089, 1106, 220 P.3d 345 [2009]). If the parents have a written agreement for post majority support incorporated into the decree of divorce, the trial court has no jurisdiction to modify the periodic support payments after the child has attained the age of 18. *Morrison v. Morrison*, 14 Kan. App. 2d 56, 60-61, 781 P.2d 745, *rev. denied* 245 Kan. 785 (1989).

Charles and Tamara both entered into the property settlement agreement and neither party provided any conditions to the contractual obligation to pay child support through May 31, 2022. Property settlement agreements are written contracts and are governed by contract law, *In re Ketter*, No. 93,993, 2006 WL 1379584, at *6 (2006 Kan. App.) (unpublished opinion), and Charles does not raise any claims regarding the contract.

Accordingly, we find the district court did not err by modifying the child support payments as to the minor child or by finding the property settlement agreement controlled once the children reached the age of majority. Therefore, Charles is required to make the payments through May 31, 2022, as he agreed to do.

Affirmed.