NOT DESIGNATED FOR PUBLICATION

No. 125,035

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
MICHAEL A. HOLMES,
*Appellant*,

v.

HEATHER M. GAGEL,
*Appellee*.


MEMORANDUM OPINION

Appeal from Johnson District Court; JACQUELYN E. ROKUSEK, judge. Opinion filed November 18, 2022. Affirmed.

*Christina E. Gondring*, of Berkowitz Cook Gondring Driskell & Drobeck, LLC, of Kansas City, Missouri, for appellant.

*Sarah Carmody*, of Sarah Carmody Law, LLC, of Overland Park, for appellee.


Before ATCHESON, P.J., BRUNS, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: Michael A. Holmes appeals the district court's denial of his "Motion To Terminate Maintenance, Or, In The Alternative, To Decrease Maintenance." The parties entered into a Property Settlement Agreement—which was approved by the district court—in which Holmes agreed to pay his ex-wife, Heather M. Gagel, maintenance payments until October 30, 2023, unless one of the parties died or Gagel remarried prior to that date. On appeal, Holmes contends that the district court erred by

1

not terminating or decreasing his agreed-upon maintenance obligation. Finding no abuse of discretion, no error of law, and no error of fact, we affirm the district court's decision.

FACTS

The parties are well aware of the underlying facts. As such, we will not repeat them in detail in this opinion. Instead, we will briefly summarize the facts in this section of the opinion and will address additional facts in the analysis section that are material to the limited issue presented on appeal.

This divorce action commenced in October 2018. In his domestic relations affidavit (DRA), Holmes stated that his gross income was $10,944 per month, his net income was $8,641 per month, and his monthly expenses were $7,421. In Gagel's DRA, she stated that her gross income was $1,433.17 per month, her net income was $1,252.92 per month, and her monthly expenses were $3,893.45.

Gagel requested that Holmes pay her maintenance in the amount of $2,239.25 per month for a period of 60 months. In response, Holmes asked the district court to deny Gagel's request for maintenance. Significant to the issue presented on appeal, the parties voluntarily entered into a property settlement agreement that addressed the issue of maintenance. In entering into the agreement, the parties represented to the district court that it was fair, just, and equitable. Likewise, the parties acknowledged that the terms of the agreement represented a negotiated settlement.

Specifically, the agreement contained the following provision regarding the payment of maintenance:

"The parties have further agreed that [Gagel] is in need of maintenance. The parties have agreed that based on what [Holmes] was earning at Cerner, he shall pay maintenance to [Gagel] in the amount of $1,900.00 per month.

2

"The parties further agree that the maintenance in the amount of $1,900.00 per month shall be paid beginning on May 1, 2019 and each consecutive month thereafter until the first to occur of the following: either parties' death; [Gagel's] remarriage; or October 30, 2023. [Holmes] has not waived his rights to claim a change of circumstance in the future regarding the reduction of the amount of maintenance or the duration of maintenance, as set forth by statute, including his loss of employment in March of 2019."

At the time the parties entered into the property settlement agreement, Holmes was temporarily unemployed. As a result, he had no reported income at the time the parties reached their agreement regarding the amount and length of maintenance. Instead, the parties based the amount of maintenance on the amount Holmes earned prior to the filing of the petition for divorce. Fortunately, Holmes was reemployed with Netsmart Technologies in August 2019 earning a slightly decreased income than he previously had earned. Specifically, his gross monthly income decreased from $10,944 to $10,358.

On May 20, 2019, the district court entered a decree of divorce. At the same time, the district court also approved the property settlement agreement signed by the parties. Specifically, the district court found the property settlement agreement was voluntarily entered into by the parties and determined the terms of the agreement to be fair, valid, just, and equitable. For the next 16 months, Holmes made the maintenance payments in the amount agreed upon by the parties.

Claiming a material change in circumstances, Holmes filed a "Motion To Terminate Maintenance, Or, In The Alternative, To Decrease Maintenance" on September 30, 2020. In his motion, Holmes alleged that his monthly income had decreased, that Gagel's income had increased, and that Gagel was residing in a new home with her boyfriend resulting in a decrease in the amount of her expenses. According to Holmes, these factors "render the current maintenance order unreasonable and in need of termination." In the alternative, Holmes argued that the amount of maintenance "should

3

be modified in accordance with the present incomes and financial circumstances of the parties."

In response, Gagel pointed out that none of the agreed-upon events for the termination of maintenance prior to October 30, 2023, had occurred. She also pointed out that cohabitation was not listed in the property settlement agreement as one of the events triggering termination of Holmes' maintenance obligation. She also argued that modification of the amount of maintenance was unnecessary because Holmes' income had not decreased so substantially as to constitute a material change in circumstances. Similarly, Gagel argued that maintenance is transitional in nature and her income had not increased so substantially as to justify modification in the amount of maintenance.

After completion of discovery, the district court held an evidentiary hearing via Zoom on June 2, 2021. At the hearing, the district court heard Holmes' testimony and 20 exhibits were admitted into evidence. The exhibits included Gagel's interrogatory responses, Gagel's bank statements, Holmes' amended DRA, Gagel's current DRA, and Gagel's current pay stubs. The district court also reviewed trial briefs submitted by the parties and the property settlement agreement entered into by the parties. After consideration of the evidence presented, the district court denied Holmes' motion on the record. Subsequently, on July 13, 2021, the district court entered a journal entry formalizing its previous ruling from the bench.

In ruling against Holmes' motion, the district court found that the parties had voluntarily agreed that the payment of maintenance in the amount of $1,900 a month was fair, just, and equitable. The district court also found that the parties had agreed to three specific events that would trigger termination of the maintenance obligation. Based on the representations of the parties and the district court's review of the property settlement agreement, the maintenance obligation became part of the decree of divorce. Moreover,

4

the district court determined that none of the triggering events for termination of maintenance had occurred.

Turning to Holmes' allegation of a material change in circumstances, the district court found:

> "The material change in circumstance that would be required in order to modify the maintenance is not predicated upon whether or not Ms. Gagel has a significant other who may be contributing to her household income at this time. If the parties had contemplated a material change of circumstances to include one or—whether or not Ms. Gagel moved in with someone, that would have been set forth in the agreement under the subsection related to maintenance, but that was not part of what was contemplated by the parties. Instead it was a change of circumstance, which according to the statute, would be a material change of circumstance.

> "When you look at this case, the change in circumstances that have been argued by Mr. Holmes in this particular matter include the fact that his income has decreased by 5.4 percent. Today's testimony was, I believe, 7 percent, although from the time of the divorce, his income has increased from an amount of 0 to over $120,000. So the fact that his income may have been decreased from the amount that he earned prior to the divorce is irrelevant here today.

> "The fact that Respondent started a new job and her income increased—well, the goal in maintenance is to allow the other party to equalize over time and be able to establish themselves and earn their own income. The amount of maintenance that was due was due through May 1st, 2019, until October 30th of 2023. It was not a significant period of time but enough time to allow Ms. Gagel to try to get back on her feet, find employment and start earning additional income.

> . . . .

> "So what the Court has to consider is what is in this agreement because the Court is bound by the agreement before it in considering whether or not this is a material

change in circumstance. A review of case law would indicate that in this particular case, unlike the cases that are cited, there hasn't been a material change in circumstance which would warrant either a decrease in the amount of maintenance that the parties agreed was fair, just and equitable at a time when Mr. Holmes had no income, particularly in light of the fact that he now has an income over $120,000 a year.

"The material change in circumstance would have to be one that would warrant a change at this point in time. The fact that Ms. Gagel has money in her account—there has been no evidence as to where that income came from. There has been no information pertaining to whether or not she received that income from someone else or perhaps inherited income. The Court has no idea where that money came from, but the whole goal is for her to get back on her feet. That is why the parties contemplated the maintenance when they agreed to $1,900 a month in the contract that both of them signed with the provision unless there was a change of circumstance.

"Quite honestly looking at the contract, considering the fact that Mr. Holmes was unemployed at the time that he signed this agreement, the only material change in circumstance that the Court could fathom would be if there was some reason Mr. Holmes was unable to work at all or was disabled to the [degree] that he couldn't work and couldn't pay the maintenance. Because at the time he signed the agreement, he signed the agreement with no income and now he has a substantial income from which he can pay the maintenance.

"So the Court would find that based on the agreement of the parties that the Court is bound by, that none of the conditions set forth in the property settlement agreement as it pertains to maintenance have been met in that both parties are still living, Respondent has not remarried, we haven't reached October 30th of 2023, and there has been no change in circumstance which would warrant a reduction or termination of maintenance at this time."

Thereafter, Holmes filed a timely notice of appeal to this court. However, he failed to docket his appeal in a timely manner. Nevertheless, this court granted his motion to

6

docket the appeal out of time over Gagel's objection. Now that the issue presented has been fully briefed by the parties, this appeal is ready for decision.

ANALYSIS

On appeal, the sole issue presented is whether the district court erred by failing to terminate or decrease the maintenance obligation agreed upon by the parties. Holmes argues that the decision of the district court "was heavily against the weight of the evidence." In response, Gagel argues that although the agreed upon maintenance may be terminated for three specific reasons, none of those reasons have occurred. In addition, she argues that the district court appropriately exercised its discretion in concluding that there was not a material change in circumstances warranting a decrease in the amount of the monthly maintenance payments.

*Standard of Review*

Generally, a district court has wide discretion over spousal maintenance. *In re Marriage of Hair*, 40 Kan. App. 2d 475, 483, 193 P.3d 504 (2008). Accordingly, a judgment regarding maintenance should be disturbed on appeal only if there was a clear abuse of discretion. 40 Kan. App. 2d at 483 (citing *In re Marriage of Day*, 31 Kan. App. 2d 746, 758, 74 P.3d 46 [2003]). A judicial action constitutes an abuse of discretion only if it is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018).

As a general rule, we review a district court's decision whether to modify maintenance to determine if there is substantial competent evidence to support the ruling. *In re Marriage of Strieby*, 45 Kan. App. 2d 953, 961, 255 P.3d 34 (2011). "Substantial competent evidence constitutes such legal and relevant evidence that a reasonable person might accept as sufficient to support the trial court's conclusion." *In re Marriage of Knoll*,

7

52 Kan. App. 2d 930, 935, 381 P.3d 490 (2016). In determining whether there is substantial competent evidence, we are not to reweigh the evidence nor are we to make credibility determinations. 52 Kan. App. 2d at 935.

To the extent that it is necessary for us to interpret the terms of a property settlement agreement voluntarily entered into by the parties, our review is unlimited. 52 Kan. App. 2d at 939. In such cases, our role is to attempt to "'ascertain and give effect to the mutual intention of the parties at the time the contract was made.'" 52 Kan. App. 2d at 940 (quoting *Hollaway v. Selvidge*, 219 Kan. 345, 349, 548 P.2d 835 [1976]). When the intent of the parties is ascertainable from the plain language of the agreement, we must enforce the parties' agreement as written. *Knoll*, 52 Kan. App. 2d at 939-40.

In addition, we exercise unlimited review over issues involving statutory interpretation. *Strieby*, 45 Kan. App. 2d at 976. Absent an ambiguity, the plain language controls our interpretation of a statute. Only where a statute's language is ambiguous are we to attempt to determine the Kansas Legislature's intent by applying the cannons of statutory construction. *Nauheim v. City of Topeka*, 309 Kan. 145, 149-50, 432 P.3d 647 (2019). Under the canons of statutory construction, we must avoid unreasonable statutory interpretations that would lead to absurd results. *In re Marriage of Traster*, 301 Kan. 88, 98, 339 P.3d 778 (2014).

*Termination of Maintenance*

When the parties agree upon spousal maintenance as part of their property settlement agreement that is incorporated into their divorce decree entered by the district court, the obligation can only be terminated or modified "as prescribed by the agreement or as subsequently consented to by the parties." *In re Marriage of Ehinger*, 34 Kan. App. 2d 583, 587, 121 P.3d 467 (2005); see also *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 710, 229 P.3d 1187 (2010). Here, it is undisputed that Holmes and Gagel

8

voluntarily entered into a property settlement agreement that included a maintenance provision. Furthermore, it is undisputed that the district court incorporated the agreement into the parties' divorce decree.

The plain and unambiguous language of the parties' property settlement agreement provided that Holmes was to pay maintenance to Gagel in the amount of $1,900 per month from May 1, 2019, until October 30, 2023, unless one of the parties died or Gagel remarried. We find this provision to be clear and unambiguous. Moreover, we find the district court's determination that none of these events has occurred to be supported by substantial competent evidence. Consequently, we conclude that the district court appropriately found that Holmes' request for termination of his maintenance obligation should be denied.

*Modification of Maintenance*

In the alternative, Holmes' motion requested a decrease in the amount of his monthly maintenance obligation. Holmes is allowed to seek a modification in the amount or duration of maintenance under the terms of the property settlement agreement to the extent allowed by statute. Pursuant to K.S.A. 2021 Supp. 23-2903, a district court has the discretion to "modify the amounts or other conditions for the payment of any portion of the maintenance originally awarded that has not already become due . . . ."

This court has found that the district court has the discretion to modify maintenance under K.S.A. 2021 Supp. 23-2903 where there has been a material change in circumstances. See *Ehinger*, 34 Kan. App. 2d at 589-90. However, there is no precise definition of what constitutes a material change in circumstances as it relates to the modification of spousal maintenance. *In re Marriage of Hedrick*, 21 Kan. App. 2d 964, 968, 911 P.2d 192 (1996). However, in other contexts—such as modification of a child custody order—it has been held that "[a] material change in circumstances must be of

9

such a substantial and continuing nature as to make the terms of the initial decree unreasonable." *In re Marriage of Nelson*, 34 Kan. App. 2d 879, 887, 125 P.3d 1081 (2006) (citing *Johnson v. Stephenson*, 28 Kan. App. 2d 275, 280, 15 P.3d 359 [2000]).

One of the relevant factors to consider in determining whether there has been a material change in circumstances that is sufficient to justify the modification of a maintenance award is to compare the financial condition of the parties at the time the property settlement agreement was reached with their financial condition at the time the modification request is made. See *Strieby*, 45 Kan. App. 2d at 967. Nevertheless, "a material change in circumstances is not an event already considered by the separation agreement." *In re Marriage of Freeman*, No. 123,568, 2022 WL 1123358, at *13 (Kan. App. 2022) (unpublished opinion). Specifically, the panel in *Freeman* found that "a material change in circumstances is something that changes the dynamics between the ex-spouses so that the continuation of maintenance payments is unfair." 2022 WL 1123358, at *13. An example of such unfairness can be found in *Ehinger*, where a panel of this court affirmed the district court's granting of a motion to reduce a maintenance award of $1,200 a month where the ex-husband's gross monthly income dropped from about $9,000 to $400. 34 Kan. App. 2d at 590.

Here, contrary to Holmes' claims, the record on appeal reflects that the district court carefully heard the evidence and arguments presented by the parties. In particular, a review of the record reveals that the district court properly took into consideration the respective financial situations of the parties. The district court expressly explained in its ruling that it had "considered the information pertaining to the amount of income the parties have and the amount of expenses that the parties have, but those are factors that are fluid, that can be changed."

Furthermore, the district court determined that, "the goal in maintenance is to allow the other party to equalize over time and be able to establish themselves and earn

10

their own income." The district court also found that "the whole goal is for [Gagel] to get back on her feet" which was "why the parties contemplated the maintenance when they agreed to $1,900 a month in the contract that both of them signed with the provision unless there was a change of circumstance."

We agree with the district court that "[t]he purpose of maintenance is to provide for the future support of the divorced spouse." *Vandenberg*, 43 Kan. App. 2d 697, Syl. ¶ 5. Although Gagel's income has increased significantly since the divorce, the district court found that this does not make the terms of the property settlement agreement unreasonable or unfair. Rather, a reasonable person could conclude—as did the district court—that the parties' agreement that Holmes pay maintenance for a period of approximately four years is serving its purpose by allowing Gagel the ability to provide for herself in the future.

Likewise, there is substantial competent evidence in the record to support the district court's finding that Holmes had no reported income at the time the property settlement agreement was entered into by the parties. As a result, it was reasonable for the district court to conclude that Holmes' income had not decreased since that time but had actually increased. Additionally, even if we accept Holmes' argument on its face, the record shows that his income had only decreased by three percent at the time of the hearing. Thus, a reasonable person could conclude that there has not been a substantial decrease in Holmes' income to warrant a finding that the maintenance obligation voluntarily agreed to by the parties is unfair.

In summary, we find that the district court's decision is supported by substantial competent evidence. Likewise, we do not find the district court's decision to be unreasonable nor do we find it to be based on an error of law or fact. In particular, we find the district court's determination that Holmes failed to establish a material change in circumstances that was substantial and continuing in nature to be supported by the record.

11

We, therefore, conclude that the district court did not abuse its discretion in denying Holmes' motion.

Affirmed.