No. 120,129

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PANTALEON FLOREZ III,
*Appellant*,

v.

RICK GINSBERG, SALLY ROBERTS,
PAUL MARKHAM, and UNIVERSITY OF KANSAS,
*Appellees*.

SYLLABUS BY THE COURT

1.

Whether a district court erred by granting a motion to dismiss is a question of law subject to unlimited review. The appellate court will view the well-pleaded facts in a light most favorable to the plaintiff and assume as true those facts and any inferences reasonably drawn from them. If those facts and inferences state any claim upon which relief can be granted, then dismissal is improper.

2.

Kansas does not recognize a cause of action in tort for educational malpractice.

3.

Courts must be careful not to reject all claims that arise out of a school environment under the umbrella of educational malpractice. Instead, the specific facts of each case must be considered in light of the relevant policy concerns that drive the rejection of educational malpractice actions.

1

4.

To state a claim for negligent misrepresentation, a plaintiff must allege that (1) defendant failed to exercise reasonable care in obtaining or communicating false information, (2) plaintiff relied on the information that defendant supplied for their benefit and guidance, and (3) plaintiff suffered damages in a transaction that defendant intended to influence.

5.

An appellate court has unlimited review over the interpretation and application of a statute of limitations under the Kansas Consumer Protection Act.

6.

A Kansas Consumer Protection Act claim becomes actionable, triggering the limitations period, when the consumer becomes aggrieved. A consumer becomes aggrieved when the consumer suffers legal harm, even if he or she fails to discover or recognize the harm.

7.

An appellate court reviews the district court's decision to deny a motion to alter or amend the judgment using an abuse of discretion standard.

Appeal from Douglas District Court; BARBARA KAY HUFF, judge. Opinion filed August 23, 2019. Affirmed in part, reversed in part, and remanded with directions.

*Pantaleon Florez Jr.*, of Topeka, for appellant.

*Eric J. Aufdengarten* and *Michael C. Leitch*, Office of the General Counsel, University of Kansas, for appellees.

Before HILL, P.J., STANDRIDGE, J., and NEIL B. FOTH, District Judge, assigned.

STANDRIDGE, J.: On May 23, 2016, Pantaleon Florez III filed a lawsuit against the University of Kansas (KU); Dr. Rick Ginsberg, Dean of the KU School of Education; Dr. Sally Roberts, Associate Dean of the KU School of Education; and Dr. Paul Markham, Associate Professor within the KU School of Education (Defendants). In the lawsuit, Florez alleged negligence and a violation of the Kansas Consumer Protection Act (KCPA) based on information posted to the KU School of Education website that misrepresented the requirements necessary to obtain an initial teaching license in Kansas. The district court granted a motion to dismiss in favor of Defendants based on the court's finding that Florez' negligence claim was actually a claim for educational malpractice, which is not an actionable theory in Kansas, and its finding that the KCPA claim was barred by the statute of limitations. Florez filed a motion to alter or amend the judgment, but the district court denied his motion. On appeal, Florez argues the district court erred in dismissing his claims. We agree. Accordingly, and for the reasons stated below, we reverse the district court's order dismissing the petition and remand with directions for the district court to reinstate the action and otherwise proceed in a manner consistent with this decision.

FACTS

The following facts are taken from the petition filed by Florez and are assumed to be true for purposes of reviewing the district court's ruling on Defendants' motion to dismiss. See *Cohen v. Battaglia*, 296 Kan. 542, 545-46, 293 P.3d 752 (2013) (district court's decision on motion to dismiss is subject to unlimited review and appellate court must accept facts alleged by plaintiff as true).

In 2012, Florez applied for and was accepted into the KU School of Education to pursue a Master's degree in Curriculum and Instruction with an endorsement in Teaching English to Speakers of Other Languages (TESOL). Florez successfully completed the coursework and received his Master's degree in May 2014.

From the date Florez submitted his application in 2012 through the date Florez received his Master's degree in 2014, KU represented on its official School of Education website that the Curriculum and Instruction "[c]oursework fulfills the requirement for the degree and a Kansas initial teaching license." During the relevant time period, each of the Defendants knew that the representations made on the website were false because each of the Defendants knew that a degree in Curriculum and Instruction from the KU School of Education did not actually meet the qualifications necessary to obtain an initial teaching license in Kansas.

On May 21, 2014, Florez met with his advisor, Professor Markham. During this meeting, Florez learned for the first time that, contrary to the representations on the website, successful completion of the coursework and a degree in Curriculum and Instruction from the KU School of Education failed to meet the qualifications necessary to obtain an initial teaching license in Kansas. Professor Markham told Florez that the Curriculum and Instruction coursework was not an initial licensure program. In response to Florez' claim that the website stated otherwise, Professor Markham disagreed.

Later that day, Florez e-mailed Dean Ginsberg about the issue. Ginsburg confirmed that his degree failed to meet the qualifications necessary to obtain an initial teaching license in Kansas and agreed with Professor Markham's opinion that the official website did not represent that successful completion of the Curriculum and Instruction coursework qualified him to obtain an initial teaching license in Kansas.

On May 22, 2014, the day after Florez met with Professor Markham and communicated by e-mail with Dean Ginsberg, Defendants removed from the website the language upon which Florez relied to enroll in and pursue his degree in Curriculum and Instruction and replaced it with new language. The new language stated that successful completion of the coursework "'will prepare students for the PRAXIS exam required by

4

the State of Kansas to add an endorsement. Successful completion of the exam will allow the addition of the TESOL endorsement to a teaching license.'"

At some point after May 21, 2014, Florez later met with Associate Dean Roberts to discuss his situation. Roberts suggested to Florez that he enroll in an alternative licensure program outside of KU. The program suggested by Roberts would require two more years of education and cost over $10,000 in tuition alone.

On May 23, 2016, Florez filed a lawsuit against Defendants seeking relief for damages he sustained as a result of the false information posted on KU's official website. The petition requested relief under a theory of common-law negligence and for violations of the KCPA.

Defendants filed a motion to dismiss both claims. With regard to the negligence claim, Defendants argued it was actually a claim of educational malpractice, which is not a cause of action recognized in Kansas. With regard to the KCPA claim, Defendants argued it was time barred by the three-year statute of limitations.

The district court granted Defendants' motion to dismiss on both claims. Florez filed a motion to alter or amend the judgment on the KCPA claim, which the district court denied.

ANALYSIS

1. *Negligence*

Florez argues the district court erred by misconstruing his negligence claim as one for educational malpractice, which is not an actionable claim in Kansas.

Whether a district court erred by granting a motion to dismiss is a question of law subject to unlimited review. The appellate court will view the well-pleaded facts in a light most favorable to the plaintiff and assume as true those facts and any inferences reasonably drawn from them. If those facts and inferences state any claim upon which relief can be granted, then dismissal is improper. *Cohen*, 296 Kan. at 545-46.

a. *Educational malpractice*

There is no dispute between the parties here that Kansas does not recognize a cause of action in tort for educational malpractice. See *Finstad v. Washburn University*, 252 Kan. 465, 477, 845 P.2d 685 (1993). Relevant here, the plaintiffs in *Finstad* sued Washburn University for breach of contract and negligent supervision after the school falsely stated in its catalog that its court reporting program was accredited. In actuality, the program was only in the process of becoming accredited. The district court discussed these two theories of recovery under the single heading, "'educational malpractice.'" 252 Kan. at 474. On appeal, the students did not object to this characterization of their claims and, in fact, affirmatively asserted in their appellate brief that the issue before the court was whether the court would recognize a claim of educational malpractice under the facts presented. Thus, whether the court properly construed their breach of contract and negligent supervision claims as educational malpractice was not an issue in the *Finstad* case; the issue presented was whether educational malpractice should be recognized as an actionable theory of liability in Kansas. The court concluded it was not.

> "The students do not offer a single valid reason why this court should create a cause of action against schools and/or teachers for negligence in education. . . .
>
> "The strong public policy reasons for not recognizing a tort action for educational malpractice are identified in *Ross* [*v. Creighton University*, 740 F. Supp. 1319 (N.D. Ill. 1990), *aff'd in part, rev'd in part* 957 F.2d 410 (7th Cir. 1992)] and *Donohue* [*v. Copiague USFD*, 47 N.Y.2d 440, 418 N.Y.S.2d 375, 391 N.E.2d 1352 (1979)] as (1) a lack of a measurable standard of care; (2) inherent uncertainties as to the cause and nature

of damages; (3) the potential for a flood of litigation; and (4) the courts' overseeing the day-to-day operation of the schools. We find these reasons to be compelling and the rationales of *Ross* and *Donohue* to be persuasive." 252 Kan. at 476-77.

Notably, the *Finstad* court did not conclude that a negligence claim against a university will always amount to educational malpractice. The *Finstad* court limited its analysis to the viability of a claim for negligence based on the quality of education a student receives. The court noted there are many factors that play into a student's education—attitude, motivation, temperament, experience, and environment—and that the causation element of a negligence claim based on the value or quality of education would be very difficult to establish. To that end, the court cited the public policy concerns expressed in other jurisdictions that previously had considered and rejected educational malpractice as an actionable theory of liability. 252 Kan. at 477 (citing *Ross v. Creighton University*, 740 F. Supp. 1319 [N.D. Ill. 1990], *aff'd in part, rev'd in part* 957 F.2d 410 [7th Cir. 1992], and *Donohue v. Copiague UFSD*, 47 N.Y.2d 440, 418 N.Y.S.2d 375, 391 N.E.2d 1352 [1979]).

Presumably because it declined to recognize educational malpractice as a viable cause of action in Kansas, the *Finstad* court did not expressly define the tort or identify the elements that would have been necessary to establish such a claim. But the court made clear that a claim of educational malpractice almost exclusively centers on a school's failure to provide an effective education. See 252 Kan. at 474-77. And like a claim of medical or legal malpractice, a claim of educational malpractice seeks to impose upon schools a duty to furnish a certain quality of education suitable to each student as it relates to teaching, supervising, placing, and testing students for competency and academic performance. See Dobbs, The Law of Torts § 259 (2000); Davis, *Examining Educational Malpractice Jurisprudence: Should a Cause of Action Be Created for Student-Athletes?*, 69 Denv. U.L.Rev. 57, 61 (1992).

7

Here, Florez alleged in his petition that Defendants knowingly placed false information on the KU School of Education website declaring that successful completion of a degree in Curriculum and Instruction would meet the qualifications necessary to obtain an initial teaching license in Kansas. Unlike an educational malpractice claim, Florez' negligence claim is not a challenge to classroom methodology, theories of education, or the quality of the education he received. His claim is unrelated to academic performance or the lack of expected skills. His claim does not bring into question internal operations, curriculum or academic decisions of an educational institution, or any assigned function of a school under state law. Finally, his claim does not interfere with the legislative standards and policies of competency. In sum, we find the district court erred in construing Florez' claim as one for educational malpractice.

Although we recognize it is in the context of a federal court applying Kansas law, our finding is supported by *Jamieson v. Vatterott Educational Centers, Inc.*, 259 F.R.D. 520, 537 (D. Kan. 2009). In *Jamieson*, the plaintiffs first alleged the defendant university and its employees negligently misrepresented that it "'had connections with Koch Industries, Coleman, and many airline companies' and that these companies 'actively and regularly sought Vatterott graduates.'" 259 F.R.D. at 537. When the plaintiffs found out this was not true, they sued the college. The defendants argued the claim should be barred under the reasoning in *Finstad* because prevailing would require evidence related to why the plaintiffs were unable to secure a position with these employers. The district court found *Finstad* was not implicated and did not bar the claim.

> "Unlike a complaint about the suitability of course materials or the competency of teachers, determining whether specified local employers 'actively and regularly sought Vatterott graduates' appears to involve an assertion of historical fact that would not require any inquiry into educational methods or policies. Nor does it necessarily require an examination of why a particular plaintiff was not hired. *Finstad* might be implicated if plaintiffs were to claim a loss of income from not being hired by these companies—such a claim would require evidence of why they were not hired. But insofar as plaintiffs

8

merely claim they suffered monetary damages by paying tuition to Vatterott—tuition they would not have paid but for the misrepresentation—*Finstad* is not implicated and does not bar the claim." 259 F.R.D. at 537.

Thus, *Jamieson* suggests *Finstad* will not apply when the public policy reasons for prohibiting an educational malpractice claim are not implicated.

"[W]hen students allege that educational institutions have failed to provide specifically promised services—for example, a failure to offer any classes at all or a failure to deliver a promised number of hours of instruction—such claims have been upheld on the basis of the law of contracts. The latter type of claims would presumably be actionable as well under a theory of misrepresentation or consumer fraud. Examples of representations that could permit a cause of action would be where a trade school . . . 'has asserted that it is accredited or licensed to give a certain degree and it is later discovered that this is false.' [Citation omitted.]" 259 F.R.D. at 538.

The *Jamieson* court denied the defendant's motion to dismiss plaintiffs' misrepresentation claim because the claim was grounded on an objective fact that easily could be confirmed. The *Jamieson* court granted the defendant's motion to dismiss on plaintiffs' claim that they received insufficient training to pass a competency exam. 259 F.R.D. at 538-39. The court construed the insufficient training claim as one for educational malpractice because it alleged inadequacies related to a subjective issue regarding the general quality of education the students received rather than an issue regarding whether an objective fact was misrepresented. 259 F.R.D. at 539.

Like the court in *Jamieson*, we must be careful not to reject all claims that arise out of a school environment under the umbrella of educational malpractice. Instead, the specific facts of each case must be considered in light of the relevant policy concerns that drive the rejection of educational malpractice actions. See *Finstad*, 252 Kan. at 477.

9

b. *Negligent misrepresentation*

Having determined the district court erred in construing Florez' negligence claim as one for educational malpractice, we now must determine whether Florez' common-law claim of negligent misrepresentation is sufficient to survive a motion to dismiss. In making this determination, we assume the facts alleged by Florez in his petition are true and construe any inferences reasonably drawn from those facts in a light most favorable to him. *Cohen*, 296 Kan. at 545-46.

The Kansas Supreme Court adopted negligent misrepresentation as an actionable tort in 1994. See *Mahler v. Keenan Real Estate, Inc.*, 255 Kan. 593, 604-05, 876 P.2d 609 (1994). To state a claim for negligent misrepresentation, a plaintiff must allege that (1) defendant failed to exercise reasonable care in obtaining or communicating false information, (2) plaintiffs relied on the information that defendant supplied for their benefit and guidance, and (3) plaintiffs suffered damages in a transaction that defendant intended to influence. *Stechschulte v. Jennings*, 297 Kan. 2, 22, 298 P.3d 1083 (2013).

In his petition, Florez claims that

- During the relevant time period from 2012 through 2014, the KU Department of Education's official website stated that a degree in Curriculum and Instruction qualified the recipient of that degree to receive an initial teaching license in Kansas.
- During the relevant time period from 2012 through 2014, a degree in Curriculum and Instruction from the KU School of Education *did not* qualify the recipient of that degree to receive an initial teaching license in Kansas.
- Defendants knew or should have known that they posted false information on the KU School of Education website declaring that successful completion of a degree

in Curriculum and Instruction would meet the qualifications necessary to obtain an initial teaching license in Kansas.

- Defendants owed Florez a duty to exercise reasonable care by posting accurate information regarding whether a degree in Curriculum and Instruction from the KU School of Education qualified the recipient of that degree to receive an initial teaching license in Kansas.

- Defendants breached their duty to exercise reasonable care by publishing false or misleading information regarding whether a degree in Curriculum and Instruction form the KU School of Education qualified the recipient of that degree to receive an initial teaching license in Kansas.

- The individual Defendants were acting within the scope of their employment with KU at the time of their negligent conduct; thus, KU is liable under the doctrine of respondeat superior.

- As a result of Defendants' negligent acts, Florez has suffered and will continue to suffer monetary damages.

- As a result of Defendants' negligent acts, Florez has suffered emotional distress, embarrassment, humiliation, and damage to his reputation, as well as actual out-of-pocket expenses.

Viewing the allegations in Florez' petition in a light most favorable to him, and assuming as true the facts alleged and any inferences reasonably drawn from them, we find Florez successfully has stated an actionable claim of negligent misrepresentation against Defendants. See *Cohen*, 296 Kan. at 545-46.

2. *KCPA*

Although the district court acknowledged that Florez had alleged sufficient facts to state a claim upon which relief could be granted under the KCPA, the court ultimately

granted Defendants' motion to dismiss that claim based on a finding that it was time-barred based on the applicable statute of limitations.

We have unlimited review over the interpretation and application of a statute of limitations under the KCPA. *Four Seasons Apts. v. AAA Glass Service, Inc.*, 37 Kan. App. 2d 248, 250, 152 P.3d 101 (2007). Florez' KCPA claim is governed by the three-year statute of limitations in K.S.A. 60-512(2). See *Alexander v. Certified Master Builders Corp.*, 268 Kan. 812, 824, 1 P.3d 899 (2000); *Golden v. Den-Mat Corporation*, 47 Kan. App. 2d 450, Syl. ¶ 6, 276 P.3d 773 (2012). A KCPA claim becomes actionable—triggering the limitations period—when the consumer suffers legal harm or, in the words of the KCPA, is "aggrieved." K.S.A. 50-634; see *Finstad*, 252 Kan. at 472; *Four Seasons Apts.*, 37 Kan. App. 2d 248, Syl. ¶ 10. The limitations period starts running when the consumer becomes aggrieved, even if he or she fails to recognize the harm. *Four Seasons Apts.*, 37 Kan. App. 2d 248, Syl. ¶ 10. A consumer may be aggrieved under the KCPA without having suffered a direct monetary loss; acting on a statutorily defined deceptive or unconscionable practice to select a provider of covered goods or services may be enough. See *Via Christi Regional Med. Center, Inc. v. Reed*, 298 Kan. 503, 519, 314 P.3d 852 (2013) (direct financial loss not necessary for KCPA violation).

In the district court's analysis of whether Florez suffered a legal harm and became aggrieved as defined by the KCPA, it reviewed the facts set forth by Florez in the petition: "[Florez] alleges that he applied to and entered into the [KU] School of Education on some undisclosed date in 2012 and that he was induced to do so in part because of alleged misrepresentations on the website relating to licensure for teaching." Based on these allegations, the court determined that the KCPA cause of action accrued in 2012, when Florez first enrolled in KU's School of Education Curriculum and Instruction program. The court ultimately held that the KCPA claim—filed by Florez on May 23, 2016—was barred by the applicable statute of limitations because it was filed more than three years after it accrued.

On appeal, Florez challenges the district court's determination that he became an aggrieved consumer in 2012 when he enrolled. Specifically, Florez claims he did not suffer a legal harm (and therefore aggrieved) until he discovered on May 21, 2014, that successful completion of KU's School of Education Curriculum and Instruction program did not qualify him for an initial teaching license as represented on KU's official website. But K.S.A. 60-512(2) does not provide a discovery provision allowing a claim under the KCPA to be tolled. And this court uniformly has refused to apply a tolling provision to claims brought under the KCPA. *Bonura v. Sifers*, 39 Kan. App. 2d 617, 635, 181 P.3d 1277 (2008); see also *Louisburg Building & Development Co. v. Albright*, 45 Kan. App. 2d 618, 629, 252 P.3d 597 (2011) (KCPA has three-year statute of limitations which starts running with occurrence of alleged conduct constituting violation, not discovery of violations); *Campbell v. Hubbard*, 41 Kan. App. 2d 1, 7, 201 P.3d 702 (2008) ("[T]he time limit for bringing a claim under the KCPA begins when the KCPA violation occurs."); *Four Seasons Apts.*, 37 Kan. App. 2d at 250-51 (discovery rule does not apply to KCPA cases).

As properly identified by the district court, the real question in determining whether the statute of limitations has run is not when Florez actually discovered he had suffered a legal harm, but the point at which Florez actually suffered the legal harm. We agree with the district court that Florez suffered a legal harm and became aggrieved in 2012 when, in his words, he was induced to enroll in the program based on website misrepresentations relating to licensure for teaching. But the district court's finding is predicated on the assumption that Florez relied on the website misrepresentations only when he initially enrolled in 2012. Assuming as true the facts alleged in the petition—as well as any inferences that we can reasonably draw from those facts—we construe the allegations in Florez' petition more broadly. Viewed in a light most favorable to Florez, the facts in his petition encompass a claim that he suffered a separate legal harm each time he relied on website misrepresentations to pay a new round of tuition and enroll in new classes within the Curriculum and Instruction program. In other words, the facts

alleged by Florez could support multiple claims for relief under the KCPA, each of which may have accrued on a separate and distinct date. Although Florez is precluded from pursuing the KCPA claim that accrued in 2012 when he initially paid tuition for and enrolled in a particular number of classes within the Curriculum and Instruction program, Florez must be given an opportunity to engage in discovery and develop additional facts to support a claim that he suffered a legal harm and became an aggrieved consumer under the KCPA in the three years preceding May 23, 2016.

3. *Motion to alter or amend judgment*

After the district court dismissed his case, Florez filed a motion to alter or amend the judgment in which he argued that KU violated the KCPA in May 2014 when it removed the alleged misrepresentation from its website. Florez characterized KU's conduct as a "bait-and-switch" tactic, which is prohibited by the KCPA. The district court denied the motion. Florez appeals from that decision, arguing that the court erred by failing to address the merits of his claim that he was baited in 2012 when KU misrepresented the requirements necessary to obtain an initial teaching license and KU switched the represented outcome in 2014 when KU removed the misrepresentation from its website.

We review the district court's decision to deny a motion to alter or amend the judgment using an abuse of discretion standard. *Exploration Place, Inc. v. Midwest Drywall Co.*, 277 Kan. 898, 900, 89 P.3d 536 (2004). An abuse of discretion occurs when (1) no reasonable person would take the view adopted by the trial court, (2) the ruling is based on an error of law, or (3) the ruling is based on an error of fact. *Bd. of Cherokee County Comm'rs v. Kansas Racing & Gaming Comm'n*, 306 Kan. 298, 323, 393 P.3d 601 (2017). In this case, we find no abuse of discretion.

A bait-and-switch claim is governed by K.S.A. 2018 Supp. 50-626(b)(5), which prohibits "offering property or services without intent to sell them." *Manley v. Wichita Business College*, 237 Kan. 427, 436, 701 P.2d 893 (1985). In *Manley*, our Supreme Court described this tactic as follows:

> "'Bait advertising is an alluring but insincere offer to sell a product or service which the advertiser in truth does not intend or want to sell. Its purpose is to switch consumers from buying the advertised merchandise, in order to sell something else, usually at a higher price or on a basis more advantageous to the advertiser. The primary aim of the bait advertisement is to obtain leads as to persons interested in buying merchandise of the type so advertised.'" 237 Kan. at 436 (quoting 16 C.F.R. § 238.0 [1985]).

The facts alleged by Florez do not reflect a bait-and-switch operation. And even if facts supported a bait-and-switch scheme, Florez does not claim that KU's decision to remove the alleged misrepresentation from its website caused him to suffer a legal harm and become an aggrieved consumer under the KCPA. Florez' petition makes clear that he is alleging Defendants' conduct caused legal harm in the form of his inability to qualify for an initial teaching license after successfully completing the program. The decision to remove the alleged misrepresentation from the KU website may be relevant to whether Defendants knew or should have known the information posted was false but it is immaterial to the issue of when Florez suffered a legal harm and became an aggrieved consumer. For these reasons, we conclude the district court did not abuse its discretion by denying Florez' motion to alter or amend judgment.

Affirmed in part, reversed in part, and remanded with directions to reinstate Florez' petition.