NOT DESIGNATED FOR PUBLICATION

No. 121,012

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

NANCY B. POGGI,
*Appellee/Cross-appellant*,

and

JOSEPH T. POGGI,
*Appellant/Cross-appellee.*

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFF DEWEY, judge. Opinion filed September 4, 2020. Affirmed.

*Jeffery L. Carmichael*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, and *T. Lynn Ward*, of Ward, Potter, LLC, of Wichita, for appellant/cross-appellee.

*Jeffrey N. Lowe*, of Penner Lowe Law Group, LLC, and *Jessica F. Leavitt*, of Stinson, Lasswell & Wilson L.C., of Wichita, for appellee/cross-appellant.

Before HILL, P.J., MALONE, J., and WALKER, S.J.

PER CURIAM: Joseph T. Poggi and Nancy B. Poggi appeal and cross-appeal, respectively, from the district court's orders on child support and spousal maintenance in their divorce proceedings. Joseph claims the district court erred in calculating and ruling on child support. More specifically, Joseph argues that the district court erred by using the extended-income formula to calculate child support without making sufficient written findings of fact to support that decision. Nancy claims the district court erred by granting

1

Joseph's motion to alter or amend the judgment to award Joseph a credit for the children's direct expenses he paid during the divorce proceedings. She also claims the district court erred by granting Joseph's posttrial motion to modify child support and spousal maintenance without a material change in circumstances. For the reasons we will explain in this opinion, we find no reversible error and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Nancy and Joseph Poggi were married on December 27, 1994. They have four children who are still minors, born in 2003, 2004, 2006, and 2008. Joseph is a plastic surgeon who has operated his own practice since 2002. Nancy is an emergency-room physician who, for the past several years, has worked part-time so that she could be home with the children. Nancy filed for divorce on January 6, 2016, and the district court entered a temporary order under which, as of March 2017, Joseph paid Nancy $2,712 per month in child support. On October 26, 2017, the district court bifurcated the proceedings and entered a decree of divorce, reserving jurisdiction on all other issues.

To their credit, the parties resolved their child custody, residency, and parenting time issues. On October 10, 2018, the district court began a four-day trial on the remaining issues: the division of assets and debts, spousal maintenance, and child support. Nancy and Joseph each presented evidence on the valuation of certain assets, computation of their income, and their ability to work. Nancy testified on her own behalf and presented testimony from her treating physicians about her diagnosis in April 2018 of breast cancer, her ongoing treatment, and how it affected her ability to work. She had stopped working altogether in June 2018.

Nancy also testified that she historically paid the children's direct expenses, and she asked the district court to order that she continue to pay them. Joseph testified on his own behalf, asserting that he had been paying the children's direct expenses and

2

requesting an order that he continue to do so. After hearing all the evidence and closing arguments of counsel, the district court took the matter under advisement. The district court issued its "Memorandum and Rulings of the Court" on December 20, 2018, setting forth its rulings and directing Nancy to prepare the journal entry.

On January 23, 2019, Joseph moved to alter or amend the judgment seeking credit for the children's direct expenses he had paid during 2017 and 2018. Nancy responded that Joseph's motion was premature since the district court had not yet filed a final journal entry and that it was improper for Joseph to request credit for past direct expenses because he had not made such a request at trial and because his paying for those expenses should be considered a gift.

On February 1, 2019, the district court filed its "Journal Entry of Final Judgment." In the section on current child support, the district court ruled that Nancy "shall be responsible for the minor children's direct expenses," but the section on past child support did not refer to direct expenses. The district court set Nancy's gross annual income at $210,000 and Joseph's at $648,708, and it used the extrapolated-income or extended-income formula set forth in the Kansas Child Support Guidelines (the Guidelines) to calculate child support. It ordered Joseph to pay $3,617 per month in child support beginning January 1, 2019 and $7,300 per month for 49 months in spousal maintenance beginning December 31, 2018. As to spousal maintenance, the journal entry stated that "[t]hese payments may be reviewed by the Court if there is a material change in circumstances, as controlled by K.S.A. 23-2903."

The district court also "re-figured" Joseph's past child support obligations; under the temporary order, he had been paying $2,712 per month. For March 2017 through February 2018, the district court "re-set" Joseph's obligation to $9,003 per month and from March 2018 through December 2018 it "re-set" Joseph's obligation to $4,319 per month. Thus, the district court found that Joseph owed a child support arrearage totaling

3

$91,562, which the district court ordered would be satisfied by a reduction in the equalization payment Nancy owed Joseph as part of the asset division.

The same day that the journal entry of judgment was filed, Joseph moved to modify spousal maintenance and child support. He noted that the district court had calculated child support obligations based on the information available at trial in October 2018, but he had since been able to determine his actual 2018 income; it was $423,929—much less than the figure the district court had estimated by averaging his income from the three prior years. With that in mind, Joseph asked the district court to modify spousal maintenance and child support to more accurately reflect his income.

Nancy replied, arguing that the evidence had not changed on her need for spousal maintenance, so the district court should not modify that amount. As for child support, Nancy argued that there had not been a material change of circumstances, as required to modify the child support amount. She noted that Joseph had argued at trial that his 2018 income would be less than the average figure used by the district court, and she asserted that Joseph's motion to modify simply revived his argument, which the district court had rejected. Joseph replied, arguing that he had shown a material change of circumstances.

On February 25, 2019, the district court held a hearing on Joseph's posttrial motions. The parties generally repeated their arguments in their written submissions to the district court. After hearing the parties' arguments, the district court took the matter under advisement.

On March 5, 2019, the district court filed its memorandum order on Joseph's posttrial motions. It granted Joseph's motion for credit for the children's direct expenses he had paid between March 1, 2017 and October 1, 2018. This amounted to $12,003.99. The district court explained that its December 2018 judgment "provided, in part, that the child support should be calculated retroactively to March 1, 2017" and that "[t]he level of

4

child support contemplated that the mother would pay the direct expenses of the children, effective March 1, 2017." The district court also decreased the amount of child support and spousal maintenance based on the new information about Joseph's actual income in 2018. The district court filed a journal entry on April 1, 2019, reflecting the modifications. Joseph's spousal maintenance was reduced to $6,355 per month effective February 1, 2019, and his child support obligation was reduced to $3,282 per month effective February 1, 2019.

Joseph appeals, arguing that the district court erred in its December 2018 order of past and prospective child support. Nancy cross-appeals, arguing that the district court erred in granting Joseph's motion to alter and amend and his motion to modify child support and spousal maintenance.

ANALYSIS

*Did the district court err by using the extended-income formula to calculate current child support without making sufficient findings of fact to support that decision?*

Joseph first claims the district court abused its discretion by using the extended-income formula to calculate current child support without making sufficient written findings of fact to support that decision. Nancy disagrees, arguing that the district court properly followed the Guidelines and made all necessary written findings. But Nancy also contends that this issue is not preserved for appeal because Joseph failed to object in the district court to any alleged inadequacies in the district court's journal entry.

Kansas appellate courts review a district court's award of child support to determine whether the district court abused its discretion. *In re Marriage of Leoni*, 39 Kan. App. 2d 312, 317, 180 P.3d 1060 (2007). Interpretation of the Guidelines requires statutory interpretation, which is subject to unlimited review. 39 Kan. App. 2d at 317.

5

*Preservation*

K.S.A. 2019 Supp. 60-252(a) requires a district court to make specific factual findings and conclusions of law when entering judgment in an action tried on the facts without a jury. Subsection (b) of that statute allows a party to make a timely motion after the entry of judgment asking the court to amend or make additional findings. K.S.A. 2019 Supp. 60-252(b). When an appellant fails to object in the district court to allegedly inadequate findings "in order to allow the trial court the opportunity to correct any omissions," that appellant "is precluded from challenging the allegedly deficient findings on appeal." *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 703, 229 P.3d 1187 (2010).

Nancy characterizes Joseph's argument as one that asserts inadequacies in the district court's written ruling, and she asserts that his failure to object on those grounds in the district court renders the issue unpreserved for appellate review. In his reply brief, Joseph argues that because the plain language of K.S.A. 2019 Supp. 60-252 does not require him to file a motion to alter or amend the judgment, he did not need to do so. But Kansas courts have repeatedly held that an objection to alleged inadequacies in a district court's findings generally is required for preservation. See *Ponds v. State*, 56 Kan. App. 2d 743, 756, 437 P.3d 85 (2019) (holding that because the record did not preclude meaningful appellate review, the failure to object in district court to the adequacy of the findings meant this court would presume the district court made all necessary findings to support its legal conclusions); *Hooks v. State*, 51 Kan. App. 2d 527, 529, 349 P.3d 476 (2015) ("The district court has the primary duty to provide adequate findings of fact and conclusions of law on the record of its decision on contested matters" but parties "must object to inadequate findings of fact and conclusions of law to preserve an issue for appeal.").

Joseph also argues that Nancy has mischaracterized his appellate argument, which he claims challenges the sufficiency of the evidence. As Joseph asserts, under K.S.A. 2019 Supp. 60-252(a)(4): "A party may later question the sufficiency of the evidence supporting the findings, whether or not the party requested findings, objected to them, moved to amend them or moved for judgment on partial findings." To prove he is challenging the sufficiency of the evidence, Joseph argues that his issues "are clearly framed as abuse of discretion issues," and he contends that he "challenges the sufficiency of the district court's findings when compared to the weight of the evidence presented at trial." We agree with Joseph that if he argues the insufficiency of the evidence, that argument is properly before this court. But any argument concerning insufficient findings is not properly before this court. Thus, we must examine Joseph's argument in detail.

In his initial appellate brief, Joseph frames his position as follows: "That the Trial Court Abused Its Discretion and Awarded Child Support Payable by Joseph T. Poggi to Nancy B. Poggi Above the Child Support Guidelines and by Extrapolating the Parties' Income Without Making Written Findings of the Factors that would Justify Increased Levels of Child Support." Joseph then explains the use of the Guidelines and notes this court's previous holding that a district court deviating from the Guidelines when determining child support must make written findings explaining the deviation. See *In re Marriage of Leoni*, 39 Kan. App. 2d at 317 ("Any deviation from the amount of child support determined by the use of the guidelines must be justified by written findings in the journal entry, and failure to make such written findings is reversible error.").

Joseph continues by asserting that "the Journal Entry of Final Judgment contains no written findings supporting a deviation from the Child Support Guidelines and the use of the extrapolated formula, [*sic*] to determine the amount of child support payable." Complaining that the district court's "itemization of the factors" relevant to its decision "is not a written finding as to why the Court decided to deviate from the Child Support Guidelines," Joseph emphasizes that the district court did not make "the required written

7

findings that this Court could review and make a determination of whether the appropriate analysis was used and the appropriate factors considered." He concludes: "When the Court failed to make the appropriate findings as required by the Kansas Child Support Guidelines and failed to explain the application of the guidelines to the facts of this case, the trial court committed reversible error."

Contrary to his assertions in his reply brief, Joseph does not make a sufficiency of the evidence argument in his initial appellate brief. Rather, he argues that the district court committed reversible error by failing to make required written findings. Joseph does not mention any evidence or the insufficiency of it in his argument on this issue. Thus, because Joseph is challenging the adequacy of the district court's written findings and is doing so for the first time on appeal, we find this issue is not properly before this court. But in the alternative, we will address the merits of Joseph's claim.

*The merits*

The Guidelines include schedules that calculate the amount of support per month per child; the schedules consider the parents' combined gross monthly child support income, the number of children in the family, and each child's age. Kansas Child Support Guidelines Appendix II (2020 Kan. S. Ct. R. 133). The schedules identify monthly child support for combined gross monthly incomes ranging from $50 to $15,500, and they provide specific calculations to use "[t]o determine child support at higher income levels." (2020 Kan. S. Ct. R. 134.) The Guidelines also instruct that if the combined gross monthly income "exceeds the highest amount shown on the schedules, the court should exercise its discretion by considering what amount of child support should be set in addition to the highest amount on the child support schedule." Kansas Child Support Guidelines § III.B.3. (2020 Kan. S. Ct. R. 100).

Joseph argues that the district court abused its discretion by using the extended-income formula to calculate current child support without making sufficient written findings of fact to support that decision. We agree with Joseph that the district court did not make specific findings of fact to support its use of the extended-income formula, but the district court did express in its memorandum decision the factors it considered in finding extrapolated child support to be appropriate:

> "The court has considered the evidence in this case as it applies to factors, including, the standard of living and situation of the parties; the relative wealth and income of the parties; the ability of Joseph Poggi to earn; the ability of Nancy Poggi to earn; the needs of Joseph, Nancy and the children; the family history and tradition; and the past and present lifestyle of the children. The court finds that uncapped (extrapolated) child support is appropriate and warranted."

This court has interpreted the Guidelines to direct that if parents' combined income exceeds the highest level set forth in the schedules, the district court must exercise its discretion to either award child support at the highest amount on the relevant schedule or use the "extended-income formula" or "extended-income extrapolation formula" to calculate the amount. See *In re Marriage of Wilson*, No. 104,830, 2011 WL 4717202, at *4 (Kan. App. 2011) (unpublished opinion). And the Kansas Supreme Court has instructed that "[a]ny deviation from the amount of child support determined by the use of the guidelines must be justified by written findings in the journal entry." *In re Marriage of Thurmond*, 265 Kan. 715, 716, 962 P.2d 1064 (1998).

Joseph argues that the use of the extended-income formula constitutes a deviation from the Guidelines that must be supported by written findings in the journal entry. But no Kansas appellate court has ever held that the use of the extended-income formula is a deviation from the Guidelines. Two of the three cases Joseph cites to support his claim did not involve child support awards based solely on the extended-income formula.

9

*In re Marriage of Leoni* addressed whether the district court erred in imposing a $5,000-per-month cap on child support despite the extended-income formula calculations resulting in a higher amount. 39 Kan. App. 2d at 321-24. *In re Marriage of Patterson*, 22 Kan. App. 2d 522, 525, 920 P.2d 450 (1996), reviewed whether the district court erred by not using the extended-income formula despite the combined monthly income exceeding the highest amount in the schedule and whether the amount calculated using the extended-income formula creates a rebuttable presumption of the appropriate child support amount. Neither of these cases held that the use of the extended-income formula requires specific written findings justifying its use. Interestingly, the *Patterson* court even distinguished cases that "dealt with deviation from the presumptive payment established in the support schedules" from those that "involved a monthly income higher than that found on the support schedules." 22 Kan. App. 2d at 529.

The third case Joseph cites, *In re Marriage of Wilson*, involved a child support amount that resulted from the district court using the extended-income formula. But that case works against Joseph's position. In *Wilson*, this court held: "[W]hen computing this support figure, the district court followed the extended-income formula found in the guidelines. We cannot say that when a district court follows the guidelines it is an abuse of discretion." 2011 WL 4717202, at *7.

This court recently filed an opinion that directly addresses Joseph's claim that the district court must make written findings of fact to support the use of the extended-income formula to calculate child support. In *In re Marriage of Madrigal*, No. 120,930 unpublished opinion filed on August 21, 2020 (Kan. App.), the district court ordered the father to pay child support using the extended-income formula. He argued that the district court erred because it did not make specific written findings justifying its reliance on the extended formula. This court rejected the father's argument with the following analysis:

"[Father's] argument fails because no specific findings were required here. The cases [Father] cites all involve the findings required to deviate from a presumptive-support figure based on the capped schedules. No case he cites applies that same rule to the discretionary decision to award support beyond the cap using the extended formula.

"So long as the district court awards at least the presumptive amount of support, the Guidelines themselves do not require written findings to use the extended formula. The Guidelines require written findings 'to make an adjustment' from the presumptive figure recommended by the schedules. See Guidelines § I. One way the district court can satisfy that requirement is by completing the portion of the child support worksheet (Section E) that covers adjustments. See Guidelines § I. Doing so 'constitute[s] the written findings for deviating from the rebuttable presumption.' See Guidelines § I. Written findings in that situation are required because a departure from the presumptive amount is a disagreement with the default support number that the economic model and the Guidelines say is reasonable under the circumstances. One would expect that such a decision would require a more thorough, written explanation.

"The same cannot be said about the discretionary decision to use uncapped income. There is no presumption that the support amount calculated by the extended formula is appropriate. The purpose of requiring more explanation disappears when the district court is simply deciding whether to apply the extended formula as opposed to deviating from a presumptively correct figure. [Citation omitted.]" *In re Marriage of Madrigal*, Slip op. at 12.

In sum, the district court must make written findings when it deviates from the presumptive amount of child support set forth in the Guidelines. But the district court's discretionary decision to use the extended-income formula to calculate child support is not a deviation from the Guidelines. The extended-income formula is set forth in the Guidelines and, as such, the use of the extended-income formula cannot logically be considered a deviation from the Guidelines that requires specific findings. We conclude the district court did not err by failing to make written findings when it used the extended-income formula to calculate Joseph's current child support obligation.

11

*Did the district court err by recalculating Joseph's pretrial child support obligation?*

In his second issue, Joseph focuses on the district court's award of retroactive child support after it recalculated his temporary child support obligations based on evidence presented at trial. As discussed above, Joseph's initial child support obligation was $2,712 per month. But in its 2019 journal entry of final judgment, the district court recalculated Joseph's past child support obligation and found that he owed a child support arrearage totaling $91,562, which the district ordered would be satisfied by a reduction in the equalization payment Nancy owed Joseph as part of the asset division. Joseph argues that the district court abused its discretion by using the extended-income formula in awarding retroactive child support without making written findings. He also argues there was insufficient evidence to support the order for retroactive child support.

To the extent that Joseph challenges the district court's failure to make certain written findings he contends are required, that claim fails for the reasons set forth above: (1) he failed to preserve the issue for appeal by not objecting to the inadequate findings in the district court and (2) the district court did not have to make specific findings justifying the use of the extended-income formula because, by doing so, it did not deviate from the Guidelines. But unlike his argument in the last issue, Joseph also legitimately challenges the sufficiency of the evidence supporting the district court's decision to award retroactive child support based on a recalculation of the parties' income. And as noted above, K.S.A. 2019 Supp. 60-252(a)(4) allows an appellate challenge to "the sufficiency of the evidence supporting the findings, whether or not the party requested findings, objected to them, moved to amend them or moved for judgment on partial findings."

When reviewing the sufficiency of the evidence supporting an award of child support, this court must "review the district court's findings of fact to determine if those findings are supported by substantial competent evidence and are sufficient to support the district court's conclusions of law." *In re Marriage of Skoczek*, 51 Kan App. 2d 606, 607-

08, 351 P.3d 1287 (2015). "Substantial evidence" refers to "legal and relevant evidence [that] a reasonable person might accept as being sufficient to support a conclusion." 51 Kan. App. 2d at 608. When reviewing the sufficiency of evidence, appellate courts do not reweigh conflicting evidence or reconsider witnesses' credibility. 51 Kan. App. 2d at 608.

The thrust of Joseph's insufficiency of the evidence argument is that the district court erred by recalculating his past child support obligation because Nancy presented no evidence at trial that the child support he had paid was inadequate. Joseph asserts that Nancy presented no evidence at trial about her actual expenses after March 2017, her actual income during that time frame, how her income related to her expenses, or how the children's needs were unmet by the $2,712 in child support he had paid. Joseph argues that because he presented evidence that Nancy had incurred no debt during the divorce proceedings, "which would have indicated that she had insufficient alimony and/or child support to care for herself and the children," the additional amount he was ordered to pay in past child support constituted a windfall to Nancy.

Joseph fails to identify any legal authority to support the proposition on which his argument rests:  the district court could not recalculate past child support set forth in a temporary order unless Nancy proved that the initially ordered amount was insufficient. "Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue." *City of Neodesha v. BP Corporation*, 50 Kan. App. 2d 731, 769-70, 334 P.3d 830 (2014). "When a litigant fails to adequately brief an issue, it is deemed abandoned." *Hill v. State*, 310 Kan. 490, Syl. ¶ 7, 448 P.3d 457 (2019).

Moreover, as this court has held, a child's actual needs alone do not determine the amount of child support. In *In re Marriage of Wilson*, a similarly high-income case, The father argued that the district court abused its discretion by not limiting child support to an amount based on the child's actual needs, thereby granting a windfall to the child's

13

mother. This court noted that the statute authorizing child support orders at the time did not limit child support to the actual needs of the child, nor did the Guidelines. 2011 WL 4717202, at *3. The *Wilson* court also noted that in *Patterson*, this court had "rejected the contention . . . that child support must be limited to a child's demonstrable needs" in high-income circumstances. *In re Marriage of Wilson*, 2011 WL 4717202, at *4 (citing *In re Marriage of Patterson*, 22 Kan. App. 2d at 528-29). Rather, "[a] child's needs are not the sole focus in determining a child support obligation in Kansas." *In re Marriage of Wilson*, 2011 WL 4717202, at *5.

The *Wilson* court also rejected the father's request that it "apply the 'Three Pony Rule,'" a phrase Joseph incorporates into his appellate argument in this case. 2011 WL 4717202, at *6. As this court explained in *Wilson*:

> "[H]e refers to an argument heard frequently in the wealthier parts of our state that 'no child, no matter how wealthy the parents, needs to be provided more than three ponies.' *Patterson*, 22 Kan. App. 2d at 528. While the court in *Patterson* did glibly refer to the 'Three Pony Rule' in dicta, such a rule is not the law in Kansas as demonstrated in the *Patterson* case itself. *Patterson* recognized that Kansas law does not focus solely on a child's demonstrable needs to guide a district court's discretionary application of the extended-income formula. 22 Kan. App. 2d at 528-29." *In re Marriage of Wilson*, 2011 WL 4717202, at *6.

In sum, Kansas law is clear that child support is not based solely on the actual needs of the child. It primarily depends on the parents' income and a child support award based on the parents' ability to pay may be upheld even if it exceeds the actual needs of the child. Thus, we reject Joseph's claim that the district court erred by recalculating his past child support obligation even though Nancy presented no evidence that the original child support award was inadequate to meet the needs of the children.

14

*Did the district court err by awarding Joseph credit for direct expenses?*

In the first two issues of her cross-appeal, Nancy argues that the district court erred by granting Joseph's motion to alter or amend the judgment to award Joseph a credit for the children's direct expenses he paid during the divorce proceedings. As we stated earlier, this credit amounted to $12,003.99. Under the Guidelines, direct expenses are "fixed expenses paid directly to a third party, such as a school, church, recreational club, or sports club to allow participation in an activity or event, or to attend school," as well as "all necessary supplies and equipment purchased to support such activity." Kansas Child Support Guidelines § II.A.1. (2020 Kan. S. Ct. R. 93). Although Nancy frames her arguments as two distinct issues, we will address them together because both relate to the credit for direct expenses. Nancy first argues that the district court exceeded its authority under a motion to alter or amend when it granted Joseph the credit. Second, she contends that res judicata barred the credit. Joseph disagrees, arguing that the district court's award of credit for direct expenses was proper.

This court reviews a district court's decision on a motion to alter or amend the judgment to determine whether the district court abused its discretion. *Florez v. Ginsburg*, 57 Kan. App. 2d 207, 218, 449 P.3d 770 (2019). A district court abuses its discretion when (1) no reasonable person would agree with the district court's ruling; (2) the court bases its ruling on a factual error; or (3) the court bases its ruling on an error of law. *Florez*, 57 Kan. App. 2d at 218.

Nancy first contends that Joseph failed to request credit for direct expenses at any point before his motion to alter or amend and she argues that a motion to alter or amend is not a vehicle by which a party may raise an issue or seek relief for the first time. Joseph disagrees with Nancy's claim that he raised direct expenses for the first time in his motion to alter or amend. He argues that because direct expenses are part of child support, his request for credit was at issue at the trial because child support was contested at trial.

15

At the hearing on Joseph's motion to alter or amend the judgment, he conceded that during the trial, "at no time did we request that you have Joseph Poggi be reimbursed for those expenses." Joseph reminded the district court that he had presented evidence at trial of his paying the children's direct expenses "to show you some history, but it was not presented to you with a request that he be reimbursed. That is our request today."

As Nancy asserts, this court has explained that "'[t]he purpose of a motion to alter or to amend under K.S.A. 60-259(f) is to allow a trial court an opportunity to *correct prior errors*.'" *AkesoGenX Corp. v. Zavala*, 55 Kan. App. 2d 22, 37-38, 407 P.3d 246 (2017). In *AkesoGenX*, this court held that a party could not raise a challenge to venue for the first time in a motion to alter or amend the judgment "because Zavala never challenged venue before the district court entered default judgment against him, [so] there was no prior error to correct." 55 Kan. App. 2d at 38.

In *Ross-Williams v. Bennett*, 55 Kan. App. 2d 524, 564, 419 P.3d 608 (2018), this court reiterated that a motion to alter or amend is meant "to allow a district court to correct a prior error. It is not an opportunity to present additional evidence [or an additional argument] that could have been previously submitted" with "reasonable diligence." See also *Wenrich v. Employers Mut. Ins. Co.*, 35 Kan. App. 2d 582, 590, 132 P.3d 970 (2006) (holding that district court did not abuse its discretion in denying motion to alter or amend when party could have presented argument before the verdict).

Under the cases cited by Nancy, the district court could have *denied* Joseph's motion to alter or amend simply because he was arguing for relief that he did not explicitly request at trial, and the court would have been on solid legal ground to do so. But the question before this court is whether the district court abused its discretion by *granting* Joseph's motion to alter or amend, which is a slightly different question.

16

As Joseph concedes, he did not explicitly ask the district court to order that he receive credit for the children's direct expenses he paid while the case was pending. But Joseph did not ask for reimbursement of the children's direct expenses at trial only because he was asking the district court to order him to be responsible for the children's direct expenses in the first place. And Joseph's request for reimbursement of direct expenses became more significant after the district court "re-figured" Joseph's past child support obligations and found that he owed an arrearage totaling $91,562. Nancy does not dispute that the district court's order for Joseph to receive credit for the children's direct expenses he paid was fair and appropriate; she only argues that the order was improper on a motion to alter or amend because Joseph had not made the request at trial. But none of the cases cited by Nancy explicitly state that the district court *lacked jurisdiction* to grant Joseph's request for credit in his motion to alter or amend. It appears to us from the record that even though the district court could have denied Joseph's motion to alter or amend on procedural grounds, the district court decided to grant the motion because Joseph's request for credit for the children's direct expenses he paid was fair and appropriate under the circumstance. We are unwilling to find that no reasonable person would have agreed with the district court's ruling.

Nancy also argues that because Joseph could have requested direct expenses credit at trial but did not do so, res judicata barred him from doing so posttrial. This court exercises plenary review over whether res judicata applies to bar a claim. *Cain v. Jacox*, 302 Kan. 431, 434, 354 P.3d 1196 (2015). For res judicata to operate, "the following four elements must be met: '(a) the same claim; (b) the same parties; (c) claims that were or could have been raised; and (d) a final judgment on the merits.'" 302 Kan. at 434.

As Joseph points out, Kansas appellate courts do not apply res judicata unless there are two cases to compare. Put another way, res judicata operates "across successive cases," not "within the life of a single case." *State v. West*, 46 Kan. App. 2d 732, 736, 281 P.3d 529 (2011); see *State v. Williams*, No. 118,781, 2018 WL 6580086, at *3 (Kan. App.

17

2018) (unpublished opinion) ("Res judicata typically applies to prevent relitigation of issues between the same parties in a subsequent action whereas the law of the case bars relitigation of issues decided in a prior appeal in the same case."), *rev. denied* 310 Kan. 1071 (2019). "The doctrine of res judicata is based on the idea that when a cause of action has once been litigated to a final judgment, it is conclusive on the parties in any later litigation involving the same action." *Penn v. State*, 38 Kan. App. 2d 943, 945-46, 173 P.3d 1172 (2008). Simply put, res judicata does not apply here because there is only one case at issue. There was no prior litigation that would trigger res judicata concerns.

In her reply brief, Nancy asserts that *Stanfield v. Osborne Industries, Inc.*, 263 Kan. 388, 949 P.2d 602 (1997), explains why Joseph's argument that res judicata does not apply here "misses the mark." But *Stanfield* held: "The doctrine of res judicata (or claim preclusion) prohibits a party from asserting *in a second lawsuit* any matter that might have been asserted *in the first lawsuit*." (Emphasis added.) 263 Kan. at 397. Because there is no prior lawsuit to consider, res judicata does not apply. Thus, the doctrine of res judicata does not bar the district court's award of credit for direct expenses.

*Did the district court err by modifying child support and spousal maintenance amounts?*

Nancy argues that the district court erred by granting Joseph's posttrial motion to modify child support and spousal maintenance because Joseph presented insufficient evidence to show the required material change in circumstances. Joseph disagrees, asserting that the modification was appropriate. The district court based the modification on Joseph's assertion that his actual 2018 income was substantially less than the estimated figure the district court relied on at trial.

"Generally, we review an order modifying child support for abuse of discretion. However, when an issue requires interpretation and application of the Guidelines, our review is unlimited." *In re Marriage of Ormiston*, 39 Kan. App. 2d 1076, 1078, 188 P.3d

32 (2008). Similarly, this court reviews an order modifying spousal maintenance for abuse of discretion and, if necessary, reviews the district court's findings of facts for substantial competent evidence. *In re Marriage of Knoll*, 52 Kan. App. 2d 930, 935, 381 P.3d 490 (2016).

K.S.A. 2019 Supp. 23-3005(a) states that a district court "may modify any prior child support order . . . when a material change in circumstances is shown." K.S.A. 2019 Supp. 23-2903 provides:

> "At any time, on a hearing with reasonable notice to the party affected, the court may modify the amounts or other conditions for the payment of any portion of the maintenance originally awarded that has not already become due, but no modification shall be made without the consent of the party liable for the maintenance, if it has the effect of increasing or accelerating the liability for the unpaid maintenance beyond what was prescribed in the original decree."

Although Nancy concedes that K.S.A. 2019 Supp. 23-2903 provides that a district court may modify spousal maintenance "[a]t any time," she still argues that a material change in circumstances is always required for a district court to modify spousal maintenance. But the sole case she cites for this proposition, *In re Marriage of Hedrick*, 21 Kan. App. 2d 964, 968-69, 911 P.2d 192 (1996), required a material change in circumstances to modify spousal maintenance only because the parties agreed to that requirement in their settlement agreement. See 21 Kan. App. 2d at 967. In any event, the district court's journal entry of final judgment here stated that spousal maintenance "payments may be reviewed by the Court if there is a material change in circumstances, as controlled by K.S.A. 23-2903." Thus, the district court could only modify Joseph's spousal maintenance obligation upon finding a material change in circumstances.

The Guidelines provide that "[i]n addition to changes of circumstances which have traditionally been considered by courts," a "[c]hange of financial circumstances of the

19

parents or the guidelines which would increase or decrease by 10% the amount shown on Line F.3 of the worksheet" will "constitute a material change of circumstances to warrant judicial review of existing support orders" Kansas Child Support Guidelines §§ V.B, V.B.1 (2020 Kan. S. Ct. R. 123). Nancy argues, and Joseph concedes, that his accurate 2018 income does not meet the 10 percent mark so as to create a presumptive material change of circumstances under the Guidelines. But this fact does not mean that the district court could not consider Joseph's request for a modification.

As traditionally considered by courts, what constitutes a material change in circumstances is case-specific, but generally the change must be material, involuntary, and permanent. See *In re Marriage of Hedrick*, 21 Kan. App. 2d at 968-69. Joseph argued to the district court that the disparity between the court's estimation of his 2018 income and the actual amount of his 2018 income was so great that it constituted a material change in circumstances that warranted modification. Nancy, on the other hand, pointed out that Kansas appellate courts have repeatedly affirmed district courts' determinations of the income of self-employed individuals, including using a multi-year average when that income dropped in the 12 months before the determination.

In its memorandum order and journal entry on the motion, the district court noted that its December 2018 calculation of child support used a three-year average income for 2018. Because the more recent information showed a "significant reduction in [Joseph's] income for 2018," the court reconfigured the three-year average and decreased Joseph's spousal maintenance and child support obligations. Although the memorandum order stated that the modifications were effective February 1, 2018, the subsequently filed journal entry correctly stated that the modifications were effective February 1, 2019.

As Nancy points out, the only evidence before the district court on the motion to modify was Joseph's short-form domestic relations affidavit. She argues that this was not sufficient to support the asserted decrease in income, and she contends that she should

20

have been afforded the opportunity to conduct discovery as to the accuracy of Joseph's claims about the reasons for his decreased income. While that request may have been appropriate, the question for this court is whether the district court abused its discretion by finding Joseph's short-form domestic relations affidavit was sufficient evidence to warranted modifying the child support and spousal maintenance orders.

A district court abuses its discretion if it bases its decision on an error of law or fact or if no reasonable person would agree with its decision. *Florez*, 57 Kan. App. 2d at 218. Here, the district court originally calculated Joseph's child support and spousal maintenance obligations based on his estimated 2018 income. In the context of his motion to modify those amounts, Joseph submitted a sworn affidavit stating that his 2018 income was much less than estimated. A reasonable person could accept a sworn affidavit as sufficient evidence for the district court to conclude that Joseph's 2018 income was lower than the number estimated by the district court. Moreover, a reasonable person could agree with the district court's conclusion that a lower actual income was a material change in circumstances and warranted recalculation of Joseph's child support and spousal maintenance obligations. Thus, we conclude the district court did not abuse its discretion by modifying the child support and spousal maintenance amounts.

Affirmed.